THE PEOPLE ex rel. THE UNION TRUST COMPANY, Appellant, v. MICHAEL COLEMAN et al., Commissioners, etc., Respondents.

The property of every stock company consists of three things, its capital, existing in money or property, its surplus, if any, and its franchise. These which are several in the ownership of the company are united in the ownership of the shareholders, and the share stock or capital stock as owned by the shareholders covers all three.

The phrase " capital stock " in the provision of the act of 1857 in relation to taxing incorporated companies (§ 3, chap. 456, Laws of 1857), which declares that " the capital stock of every company liable to taxation," save

as excepted, " together with its surplus, profits or reserved funds exceeding ten per cent of its capital" after making certain deductions, "shall be assessed at its actual value and taxed in the same manner as the other real and personal estate of the county," means not the share stock, but the capital owned by the corporation, the fund required to be paid in and kept intact as the basis of the business enterprise.

In taxing corporations, therefore, under said act the subject of valuation and assessment is never the share stock, but always the company's capital and surplus which should be assessed at its actual value when that is known or can be ascertained.

Accordingly *held*, it was error on the part of assessors who, in assessing a corporation under said act, took the market value of its shares as the " actual value " of its capital stock and based their assessment thereon, although the corporation presented to them a sworn statement of its assets and liabilities, the truth of which was not questioned and which showed that there was nothing subject to assessment.

*It seems*, however, when the amount of capital and surplus are undisclosed and unknown, the assessors may consider the market value of the share stock and the general condition of the company, not as the thing to be valued and assessed, but as an aid in discovering the value of that which is to be assessed.

*It seems*, also, further resort may also be had to such means of information when the amount of capital and surplus is stated, but the assessors have sufficient reason, founded upon facts established by competent proof, to disbelieve the statement.

*Oswego Starch Factory* v. *Dilloway* (21 N. Y. 449); *People ex rel.* v. *Comrs. of Taxes* (23 id. 192), distinguished and limited.

*People ex rel.* v. *Dolan* (36 N. Y. 59); *People ex rel.* v. *Ferguson* (38 id. 89); *People ex rel.* v. *Bd. of Assrs.* (39 id. 81); *People ex rel.* v. *Comrs. of Taxes* (95 id. 554); *People ex rel.* v. *Asten* (100 id. 597); *People ex rel.* v. *Comrs. of Taxes* (104 id. 240); *People ex rel.* v. *Coleman* (107 id 541), distinguished.

(Argued April 17, 1891; decided June 2, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of October, 1890, which affirmed an order of Special Term dismissing a writ of certiorari to review an assessment of the relator's capital for the year 1889.

The relator is a corporation organized under a special act of the legislature of 1864 (Chap. 316, Laws of 1864), doing business as a trust company in the city of New York. On the second Monday in January, 1889, it furnished to the commis-

sioners of taxes and assessment a detailed statement of its assets and liabilities which was duly sworn to, and claimed that all its capital stock and surplus, being invested in United States securities, was exempt. The commissioners held that the capital stock, the actual value of which they were to assess, was the shares and they ascertained such value by multiplying the nominal capital by the market price of the shares and deducted therefrom ten per cent of the nominal capital, the assessed value of the real estate and the investments in United States securities.

*Wheeler H. Peckham* for appellant. The words " capital stock " in the statute refer to the capital or property of the relator and not to the shares of the relator in the hands of individuals, and such capital or property should be valued and assessed and not such shares. The words " capital stock " in the act of 1857, are synonymous with "capital " and the word in respect to a corporation has the same meaning as in respect to an individual. It means the net balance of property owned by individual or corporation after payment of debts, or after deducting enough to pay the debts. ( *Williams* v. *Tel. Co.*, 93 N. Y. 188 ; *F., etc., Co.* v. *Mayor, etc.*, 7 Hill, 281 ; Laws of 1864, chap. 316, § 7 ; Laws of 1853, chap. 333 ; 3 R. S. 2061, § 8.) The history of the taxing of corporations necessitates this meaning of the words " capital stock " in the act of 1857. (*F. L. & T. Co.* v. *Mayor, etc.*, 7 Hill, 261 ; *People* v. *Comrs.*, 95 N. Y. 554.) The market value of the shares is not the *factum probandum*. (*People ex rel.* v. *Coleman*, 107 N. Y. 541 ; *People.* v. *Asten*, 100 id. 597.) The value of the franchise cannot be considered in estimating the value of the " capital " or of its synonym, " the capital stock paid in or secured to be paid in." (*People* v. *H. Ins. Co.*, 92 N. Y. 329 ; Laws of 1880, chap. 542 ; Laws of 1881, chap. 351 ; *M. S. Bank* v. *City of Rochester*, 37 N. Y. 367 ; *Bank of Commerce* v. *New York City*, 2 Black, 620 ; *Van Allen.* v. *Assessors*, 3 Wall. 583 ; *People* v. *H. Ins. Co.*, 134 U. S. 594.) While proof of market value of the stock in the hands of individuals may be competent as some evidence of the " actual value

of the capital stock" referred to in the statute, yet when the actual value of the assets or property of the corporation is once ascertained, it is error to allow it to be changed by evidence of the market value of the stock in the hands of individuals. (100 N. Y. 600; *People* v. *Comrs.*, 95 id. 559; *People* v. *Gas Co.*, 39 id. 81; *People* v. *Ins. Co.*, 38 id. 89; *People* v. *Dolan*, 36 id. 59.) To sustain the judgment of the court below is to overrule the decisions of the United States Supreme Court and in a case where that court would have jurisdiction on a writ of error. That court has uniformly held that the law of 1857, was a tax on property and on the property in which the capital stock was invested. (*People ex rel.* v. *Comrs.*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200; 3 id. 200; Laws of 1863, chap. 240; *Van Allen* v. *Bd. of Assessors*, 3 Wall. 573.)

*D. J. Dean* for respondents. The method adopted by the respondents in ascertaining the actual value of the relator's capital stock was authorized by the laws of this state as construed by our courts. (2 R. S. [8th ed.] 1149, § 1; Laws of 1857, chap. 456, § 3; *People ex rel.* v. *Bd. Comrs.*, 95 .N. Y. 554; *People ex rel.* v. *Asten*, 100 id. 597; *People ex rel.* v. *Tax Comrs.*, 104 id. 240; *People ex rel.* v. *Bd. Comrs.*, 107 id. 541; *People ex rel.* v. *Comrs.*, 21 N. Y. S. R. 350.) If the respondents adopted a proper method in fixing the assessable value of the relator's capital stock, the result attained must stand until conclusively shown to be erroneous. (91 N. Y. 581; 100 id. 600; *People* v. *Hicks*, 105 id. 198; *People* v. *Coleman*, 107 id. 541.)

Finch, J. The relator has been assessed upon an "actual value" of its capital stock derived entirely from the market value of its shares. These are selling at the large premium of something over five hundred dollars for each share of one hundred dollars, and the assessors have concededly taken that valuation, or the principal part thereof, as the "actual value" of the company's stock liable to taxation, instead of its own proved and established value. The relator challenges the

assessment, and through all the proceeding has persistently raised and pressed the inquiry, not so much as to the mode or manner of ascertaining value, but rather as to what is the precise thing to be valued, whether the capital stock of the company or the capital stock held in shares by the corporators. If these are the same, or, in any just sense, equivalents, either might be valued without substantial error, but if they are not such, we must determine which is to be valued before we can solve the problem of how to value it.

Now, it is certain that the two things are neither identical nor equivalents. The capital stock of a company is one thing; that of the shareholders is another and a different thing. That of the company is simply its capital, existing in money or property, or both; while that of the shareholders is representative, not merely of that existing and tangible capital, but also of surplus, of dividend earning power, of franchise and the good will of an established and prosperous business. The capital stock of the company is owned and held by the company in its corporate character; the capital stock of the shareholders they own and hold in different proportions as individuals. The one belongs to the corporation; the other to the corporators. The franchise of the company, which may be deemed its business opportunity and capacity, is the property of the corporation, but constitutes no part or element of its capital stock; while the same franchise does enter into and form part, and a very essential part, of the shareholder's capital stock. While the nominal or par value of the capital stock and of the share stock are the same, the actual value is often widely different. The capital stock of the company may be wholly in cash or in property, or both, which may be counted and valued. It may have in addition a surplus, consisting of some accumulated and reserved fund, or of undivided profits, or both, but that surplus is no part of the company's capital stock, and, therefore, is not itself capital stock. The capital cannot be divided and distributed; the surplus may be. But that surplus does enter into and form part of the share stock, for that represents and absorbs into its own value surplus as well

as capital, and the franchise in addition. So that the property of every company may consist of three separate and distinct things, which are its capital stock, its surplus, its franchise; but these three things, several in the ownership of the company, are united in the ownership of the shareholders. The share stock covers, embraces, represents all three in their totality, for it is a business photograph of all the corporate possessions and possibilities. A company also may have no surplus, but, on the contrary, a deficiency which works an impairment of its capital stock. Its actual value is then less than its nominal or par value, while yet the share stock, strengthened by hope of the future and the support of earnings, may be worth its par, or even more. And thus the two things — the company's capital stock and the shareholder's capital stock — are essentially and in every material respect different. They differ in their character, in their elements, in their ownership and in their values. How important and vital the difference is, became evident in the effort by the state authorities to tax the property of the national banks. The effort failed, and yet the share stock in the ownership of individuals was held to be taxable as against them. The corporation and its property were shielded, but the shareholders and their property were taxed.

Now some degree of confusion and trouble have come in because these two different things are denominated alike capital stock, making the expression sometimes ambiguous. It is the important and decisive phrase in the law of 1857, under which the assessment here resisted was made, and requires of us to determine at the outset in which sense it was used. The section reads thus : " The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment-roll, or shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at

its actual value and taxed in the same manner as the other real and personal estate of the county."

There are reasons in abundance for the conclusion that by the phrase " capital stock " the statute means not the share stock, but the capital owned by the corporation; the fund required to be paid in and kept intact as the basis of the business enterprise, and the chief factor in its safety. One ample reason is derived from the fact that the tax is assessed against the corporation and upon its property, and not against the shareholders, and so upon their property. In theory every tax is charged against some person, natural or artificial, resident or non-resident, known or unknown. It is assessed not upon property irrespective of ownership, but against persons in respect to their property (23 N. Y. 215), and effects not merely a lien, but also a personal liability. On the assessment-rolls in this case appeared the name of the relator as the person assessed, and the amount of the tax became a charge against it. Of course, it could only be assessed and taxed in respect to its own property, that which in its corporate character it owned and possessed, and so it follows inevitably that the statute concerns the company's capital stock, that is its real and actual capital, and not in any respect the share stock which it does not own and whose possessors have not been assessed.

Another reason is found in those terms of the statute which include and exclude respectively specific kinds or classes of property in the corporate ownership. Thus the assessment is to be laid not merely upon the capital stock of the corporation, but also upon its surplus. No such explicit direction was necessary, except upon the assumption that by the words " capital stock " was meant simply " capital," which would not include surplus, and so required that it be subjected by name to the valuation. If the share stock was meant its value would include surplus and make its specification not only needless but confusing. But while the statute includes surplus by specific mention, it excludes franchise by omitting it. The omission of franchise is emphasized by the careful inclusion of surplus. It is fully and definitely settled that the tax imposed

by the statute is not upon franchise. (*People* v. *Comrs. of Taxes*, 2 Black. 620.)   But if that be so, it is not upon the share stock, for that represents the value of the corporate franchise as a part of the total of the corporate property. And so, both by what it specifically includes and silently excludes, the statute itself informs us that by " capital stock " it means and intends the company's actual capital paid in and possessed, and not at all or in any sense the share stock.

The same thing becomes apparent from a study of the whole line of legislation which culminated in the law of 1857.   It was traced in detail upon the argument with great industry and wealth of illustration.   We have verified it by traveling over the same track, and without taking pains to reproduce it, may assert the general result which it discloses and select out one or more illustrations.   The investigation shows that the word " capital " and the phrase " capital stock " are used interchangeably and synonomously, and where the latter phrase occurs there is almost always something in the statute which stamps and labels it as referring to the actual capital of the company.   Thus the law of 1825 (Chap. 262), after providing for the taxation of all persons owning or possessing property, proceeds to declare that corporations shall be deemed persons for the purposes of the act, and requires them to furnish a statement of the amount of " capital " actually paid in ; and then, referring to turnpike and bridge companies, requires them to state " the amount of capital stock actually paid in or secured to be paid in."   Both clauses refer to the same assets or fund, naming it indiscriminately " capital " and " capital stock."   Again, in the law of 1825 (Chap. 254) the assessors, after putting the corporation by name on the assessment-roll, are required to add the amount " of its capital stock paid in or secured to be paid in," and to designate how much of it is in real and how much in personal property, and so no doubt is left that by " capital stock " was meant simply the " capital " possessed in cash or invested in securities or real estate.

The illustrations might be multiplied and fortified by reference to numerous acts relating to the formation or manage-

ment of manufacturing, railroad, business and telegraph companies in which the two forms of expression are used indiscriminately and as convertible terms; but I think quite enough has been said to require unhesitating assent to the proposition that, under the law of 1857, the thing to be taxed is the capital of the company and not the shares of the stockholders.

Indeed, I should feel bound to apologize for arguing what seems to me so simple and plain a proposition, were it not for the fact that it has been largely ignored by assessors and not always clearly kept in mind by the courts, and but for the further fact that the right to adopt as the taxable valuation the value of the shares, totally disregarding the value of the company's capital, has been asserted in this case, maintained by the courts below, and claimed to be fully justified by very much which we ourselves have decided or said.

Before examining the cases in detail to see whether they hamper our freedom of judgment upon the question presented, I think it safe and also prudent to assert three things as applicable generally and to all the cases alike. First, this court has never decided, either by a direct determination or by necessary implication, that the law of 1857 authorizes the imposition of a tax upon anything else than the actual capital of the corporations, together with their surplus; second, that the precise question whether the capital of the companies or the share stock of the shareholders forms the basis of valuation and the thing to be assessed, has not been heretofore formally and distinctly presented; and third, that all seemingly erroneous expressions of opinion are corrected at once when they are referred to the permissible conditions under which the value of the share stock in the market may be referred to, not as the thing to be valued and assessed, but as an aid or help in discovering the value of the other and different thing which is to be valued and assessed. Keeping these general propositions in mind we now recur to the cases.

The most important, because it opened the door and led the way to some doubtful modes of expression, is that of *Oswego Starch Factory* v. *Dolloway* (21 N. Y. 449). That was an

action against the assessors to recover damages for having laid
an assessment upon the plaintiff company without jurisdiction
and in violation of law. Two grounds of liability were
asserted : one that the business residence of the corporation
was at Auburn, in the county of Cayuga, and the assessors of
Oswego had no jurisdiction to assess it at all ; and the other
that the valuation was excessive and based upon the share value
and the fact of a successful and lucrative business. The report
of the case shows merely that after deducting from the par
capital the assessed value of the real estate the assessors added
to the balance seventy-five per cent to reach actual value. I
have examined the original case preserved in our records, and
it developes a state of facts very much broader than the report
of the case indicates. The corporation had made no list or
statement of its assets as required by law. It chose to leave
the assessors in the dark and furnish them with no information.
They were compelled to act upon such facts as they could
ascertain. They knew the prosperous character of the busi-
ness, and had reason to believe that the company had a large
surplus, but could not ascertain how much. In this dilemma,
they inquired as to the value of the share stock, and claimed that
they found it worth nearly double its par. Thereupon they
added a part of that premium to the nominal capital as being
the actual value of the capital and its accretions in the form
of surplus. In all this there was no attempt to assess the share
stock, but simply an effort to get at the actual value of capital
and surplus together. On the day for the hearing of objec-
tions the president of the corporation appeared. He made an
affidavit which claimed that the company could only be assessed
at Auburn, but which uttered no word of complaint against
the valuation put upon capital and surplus, and furnished no
information on that subject. On the trial he testified that no
other proof than his affidavit was put before the assessors.
The latter in their answer explicitly deny that they took into
account the value of the profitable business, or that they took
as a basis the full value of the share stock. On such a state
of facts the decision which upheld the action of the assessors

was entirely correct and sound and in complete accord with the views which I have herein expressed. But while the decision was right I am compelled to admit that some of the reasons in the opinion are open to criticism. Judge Denio does say, in substance, that the actual value of the capital may be swollen above its par value by crediting to it the money value of the fact that " the enterprise was happily chosen and skillfully conducted." But the statute does not tax either the choice or the conduct. Those are the chief elements in the value of the franchise, and the law does not tax the franchise. If, as I think may be the truth, the learned judge had in his mind that the happy choice and skillful conduct of the enterprise fairly indicated an accretion to capital of accumulated surplus, and meant only to say that the value of that accretion should be added to capital, then he kept within the boundaries of the statute. But beyond that he intimated quite plainly that the value of the share stock is the fair equivalent of capital and surplus. In that conclusion I cannot concur, but I disagree with less reluctance because the learned judge himself, in a later case, very nearly corrected the error even if he did not acknowledge it.

That was the case of *People* v. *Commissioners of Taxes* (23 N. Y. 192). The question there involved was the right of the corporation to have deducted from the assessment that portion of its capital invested in United States bonds which had been issued without an express enactment exempting them from taxation. Judge Denio, on this occasion again referred to the statute of 1857, and modified his views so far as to say that the assessors " may look " at the value of the share stock, which he adds " would ordinarily furnish a practical test," and he cites his own previous decision. Four of the judges, concurring in the result, disagreed as to his construction of the statutes, and one, Judge Comstock, dissented entirely and wrote out his views at length. That opinion shows that " capital " and " capital stock " are used indiscriminately to designate the estate of the corporation, and that such estate, and not the share stock, is the subject of the valuation. The report of the case

leaves it probable that a majority of the court to that extent concurred.

It is to be noted that in neither of these cases was the precise question now discussed formally or definitely presented, or necessarily involved, and that in neither opinion is it asserted that the share stock instead of the capital is the subject of taxation. That doctrine has arisen, if at all, as an inference from what was said, and not from what was decided. It is further to be observed that in these two cases Judge DENIO betrays a consciousness that his test of share value is both unsound and applicable only in instances which compel it as a necessity; for first he says " there is, doubtless, an incongruity in including the accumulated profits above ten per cent in the assessment where the capital is assessed at its market value;" and assigns as a reason, what I have already said, that to assess the share stock assesses the surplus and makes its specific mention wholly superfluous; and, second, he explicity admits that " either the assessor or the taxpayer would *have a right* to examine and ·*have an estimate made* of the securities." That admission is fatal to any theory that the share stock is the subject of valuation, for if it is, the value of the securities representing the capital is totally immaterial, and the right to have it valued depends upon its being the very subject of taxation.

Three other cases followed the two upon which I have commented, in which the statute was referred to. (*People* v. *Dolan*, 36 N. Y. 59 ; *People ex rel. Insurance Co.* v. *Ferguson*, 38 id. 89 ; *People ex rel. Gas Company* v. *Bd. of Assessors*, 39 id. 81.) They related to the permitted deductions and exemptions, and can scarcely be said to bear upon our present inquiry except inferentially, and the inferences which they suggest are certainly not in the direction of a right to value the share stock instead of the capital.

We come now to the decision in *People ex rel.* v. *Commissioners of Taxes of the City of New York* (95 N. Y. 554). It would be quite sufficient to say of that case that it involved in no degree the question here at issue. The sole conflict between the contending parties assumed that capital and surplus aggre-

gated had been fairly and justly valued, and that the property to be taxed was such capital and surplus.    The opinion aggre-gates them under the one name of "capital," which was not strictly correct, and yet was sufficiently so for the purposes of an inquiry which did not depend upon any special discrimina-tion between them.    That discrimination was so carefully made by the same pen in *Williams* v. *West. Un. Tel. Co.* (93 N. Y. 188), as to leave no doubt that it was perfectly under-stood.    The point of the case was to determine whether the real estate was to be deducted from the nominal capital stock, or from the actual value of the capital, using that word as including surplus, and whether at the value paid for it, or at the value for which it was assessed on the assessment-rolls. Those questions and those only were decided, and if in the process, surplus was treated as part of capital instead of accre-tion beyond it, the aggregation was at the moment convenient and immaterial to any necessity of the case.    It did no harm then, but must not be allowed to prevent, upon a different inquiry, the discrimination which in fact this court had already made.    If, beyond that, words were used which indicate that our judgments had been affected by the opinion in the *Oswego Starch* case, the result was natural so long as attention was not drawn to an inquiry which would have developed the existing ambiguity and its cause.

The next case relied upon by the respondents is *People* v. *Asten* (100 N. Y. 597).    That again was a question, and a question only, of the mode of deducting the real estate.    No dispute existed over the valuation of the company's capital stock.    It was deemed worth exactly the par of its nominal capital, and both sides assented to that as its actual value.    It was of no consequence to the decision how the assessors arrived at that value, since no question arose over it, and what was said in the opinion as to the right of the assessors to consider the market value of the shares, and the dividend earning power of the corporation was *obiter* and needless to the sole questions at issue which were whether the real estate should be deducted at the price paid for it, or at its assessed value on the rolls,.

and whether an incumbrance upon it in the form of a mort-gage for eighty thousand dollars should or should not be deducted. Indeed, the remarks which I have characterized as *obiter* may, as we shall presently see, have been justified in their application to the action of the assessors by the existing circumstances which surrounded their action, but which do not appear in the report of the case.

The next authority relied on by the respondents is *People ex rel. Panama Railroad Co.* v. *Commissioners of Taxes* (104 N. Y. 240). There again the point involved respected solely the deduction of real estate and the manner of ascertaining the value to be deducted. Not one word was said in the opinion as to what was meant by the actual value of capital stock and surplus, or what was the thing to be valued, for no question whatever was raised over that. The real estate of the company was a railroad situated in a foreign country. Not being assessed upon the rolls in this state or elsewhere, its assessed value could not be deducted, and resort was necessarily had to its actual value. The relator sought to estimate the value of the real estate by fixing first the aggregate value of the whole railroad and then deducting the value of the equipment. This court combated that method on the ground that it imported into the value of the real estate the additional value of the franchise. When the opinion declared that "the value of the franchise of the cor-poration is an important element in determining the value of a railroad as a whole, or the value of its capital stock," it meant exactly what it said, using the last phrase in the sense which is entirely apparent, viz., that of the share stock which represents the railroad as a whole, or the entire property of the company as a railroad company.

The final case to be examined is *People ex rel. Knicker-bocker Fire Ins. Co.* v. *Coleman* (107 N. Y. 541). It appeared that the relator's stock at par amounted to $210,000 while its share stock was selling below par and for ninety cents on the dollar. But the assessors did not assess the share stock, nor take its value as the test of capital, and so showing no surplus but a deficiency. On the contrary, they went to the company's

own books for information and there found not a deficiency but a surplus, and deducting from the aggregate of capital and surplus the assessed value of the real estate, United States stock and the exempted ten per cent, they found a taxable balance of about $25,000. The company resisted. Their counsel argued that "the assessment should not exceed the market value of the capital stock, less statutory exemptions." (P. 542.) By capital stock he plainly meant the share stock which was selling at ninety. The counsel for the assessors insisted that "the market value of shares of stock of the corporation is not the proper and sole test of the value of the corporate capital." On that issue we sustained the assessment. In so doing we necessarily decided that capital, swollen by surplus or diminished by losses, was the subject to be valued and taxed and not the share stock; and that when the actual value of capital and surplus was known and established, in this case by the party's own books, no reference to the value of the shares could be permitted to lessen the valuation. The case, therefore, was correctly decided and in entire accord with the doctrine which I have herein advocated.

But the opinion contained a statement which has been cited as conclusive by the General Term and also on the argument at our bar, and to which I now refer because it opens the way to the final point of the discussion and to a fact which accounts for and explains most of the references to the value of share stocks which are seemingly of a doubtful character. The language was this: "The law does not prescribe how the actual value of the capital stock of a corporation shall be ascertained. That is left to the judgment of the assessors, and in appraising the actual value they have a right to resort to all the tests and measures of value which men ordinarily adopt for business purposes in estimating and measuring values of property. They may take into account the business of the corporation, its property, the value of its actual assets, the amount and nature of its present and contingent liabilities, the amount of its dividends and the market value of its shares of stock in the hands of individuals." Now I do not desire

to withdraw in any degree the concurrence which I yielded to this statement when the case was decided, but it must not be wrested from its application to the facts then before the court and be made to do duty on a different and broader field. The corporation was a fire insurance company with a wide range of contingent liabilities. It had made no statement to the assessors and had left them to their own resources. Where that is so what are the officers to do? Necessarily they must resort to such means of information as remain and are accessible, and in that emergency they may "look at," "take into account," consider the market value of the shares. That is something very different from assessing the share stock or making its value the conclusive measure of capital and surplus. Such reference is simply the result of neccessity, a resort to the poorest means of information and to the most deceptive and treacherous test, because the better means or truer test cannot be obtained. How unreliable the test of share value may be through the effect of gambling, false rumors, scarce money and panics, Judge COMSTOCK describes in his opinion to which I have already referred ; and yet there are cases in which it furnishes some aid to the judgment in the absence of accurate knowledge. It is such cases that the courts have had in mind when justifying a reference to the stock market, and not those in which the amount and value of capital and surplus was fully and faithfully disclosed. And so I think the authorities either fairly permit or fully justify the conclusions which I have reached and which may be stated with reasonable accuracy thus : First, the subject of valuation and assessment is never the share stock, but always the company's capital and surplus. Second, such capital and surplus must be assessed at its own value, and when that is correctly known and ascertained, no other value can be substituted for it. Third, where its amount and value are undisclosed and unknown the assessors may consider the market value of the share stock and the general condition of the company as indicative of surplus or deficiency and of the probable amount of either. Fourth, they may further resort to such means of information when

1891.]    People ex rel. U. T. Co. *v.* Coleman et al.    449

Opinion of the Court, per Finch, J.

the amount of capital and surplus is disclosed, but the assessors have sufficient reason to disbelieve the statement, and such reason is founded upon facts established by competent proof.

If these conclusions are correct it will follow that the assessment complained of should be canceled. The corporation presented to the assessors a sworn statement of its assets and liabilities. If it be true, there was nothing subject to assessment. But its truth is not questioned, and there is not the least reason to doubt it. The assessors did not doubt it : they merely deemed it immaterial, and so testified when examined. In other words, knowing with certantity the value of one thing, they claimed the right to affix to it the larger value of a different thing. Authorized only to tax against the company its capital and surplus, they assumed the right practically to tax it for the share stock held by individuals. They have not in terms claimed that the share stock is the subject of taxation, nor has the counsel who represented them on the argument, but both have maintained and defended what is the exact and complete equivalent. The right asserted is a discretion in the assessors at their free will to assess corporations upon and at the value of their capital and surplus, or upon and at the value of the share stock independently of established facts and whenever they please. The law gives them no such discretion. How it has been exercised and how destructively to the rights of taxpayers may be seen by comparing the action in this case with that in one of the cases which we have reviewed. Where the share stock was selling at ninety, and so below par, the assessors refused to take that value and went to the company's books in search of a larger one, which they found and adopted. Here, where the actual value of capital and surplus is established so that they frankly admit the fact, they calmly disregard it and fly to the larger value of the share stock. The statute has given them no such right. They are not lawless rovers, wandering among corporations at will, but regular officers bound by discipline and controlled by the law, and whose discretion exists within fixed and definite limits.

It is said, and it is true, that large masses of personal prop-

erty escape taxation, and the owners are persistent and artful and not over nice in their efforts to avoid a just share of the public burdens, and so we should uphold faithful assessors in every attempt to do their full duty. I think this court will not be unmindful of the situation, but before all we must first ascertain and then obey the law. If in that process evils result or are disclosed, the remedy must be sought elsewhere.

It follows that the judgment and order of the General and of the Special Term should be reversed and the assessment against the relator vacated and canceled, without costs.

All concur, except PECKHAM, J., not voting.

Judgment reversed.