PEOPLE ex rel. KEPPLER & SCHWARZMANN v. BARKER et al.

(Supreme Court, Appellate Division, First Department. November 19, 1897.)

1. TAXATION—SECOND APPLICATION FOR REDUCTION.
    The relator filed a statement with the commissioners of taxes, and secured a reduction of an assessment. Thereafter it filed another statement, claiming a further reduction on grounds omitted from the first. This the commissioners denied. *Held*, that the first application and determination did not bar a review of the second, if the commissioners saw fit to entertain it.

2. SAME—PERSONAL PROPERTY—DEDUCTIONS FOR INDEBTEDNESS.

Laws 1892, c. 202 (amending 1 Rev. St. pt. 1, c. 13, tit. 2, art. 2, § 9), providing that, in determining the amount of a taxpayer's personal property, no reduction shall be made on account of any debt incurred in the purchase of nontaxable property, or for the purpose of evading taxation, does not apply to, shares of stock of a domestic corporation liable to taxation, which were purchased on credit, though under 1 Rev. St. pt. 1, c. 13, tit. 1, the holder of such stock is not liable for a personal tax thereon.

Appeal from special term, New York county.

Certiorari in the name of the state, on the relation of Keppler & Schwarzmann, against Edward P. Barker and others, commissioners of taxes and assessments of the city of New York, 'to review the decision of respondents refusing a certain reduction in taxation. From an order dismissing the writ, and from judgment awarding costs to respondents, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

John B. Green, for appellant.
James M. Ward, for respondents.

BARRETT, J. On January 13, 1896, the respondents assessed the relator, a domestic corporation, at the sum of $200,000, upon its personal property, for the year 1896. On March 13, 1896, the relator filed with them a verified statement, showing a taxable surplus of $46,379, and the respondents reduced the assessment to this sum. Thereafter, on March 25, 1896, the relator filed another verified statement, claiming a further reduction of $40,000, on account of two notes of $20,000 each. The debt represented by these notes was stated to have been incurred in the purchase of stock of the J. Otten Lithographing Company, a domestic corporation. On April 8, 1896, an affidavit of the relator's secretary was filed, giving particulars as to the debt.

The respondents contend, at the outset, that the relator is barred from insisting upon a reduction of the $40,000 by the failure to include it as a debt in the first statement filed. Their claim is that they came to a correct conclusion upon the facts first presented, and that this determination is final and binding upon the relator. People v. Barker, 75 Hun, 6, 26 N. Y. Supp. 971, is cited in support of this contention. That case, however, differs essentially from the present. There the relator filed but one statement with the commissioners. A reduction followed. The relator was still dissatisfied, and obtained a writ of certiorari. In that proceeding the fact upon which the claim of a further reduction was made appeared for the first time. The relator was consequently seeking to reverse the commissioners' action on account of a fact never brought to their attention. A reversal solely upon such an outside fact would have been manifestly improper. As the court there said, it would have been contrary to the established rule that a dissatisfied taxpayer was bound, under the act of 1880 (chapter 269), to lay his complaint before the commissioners, as the act permitted, before suing out a writ of certiorari. People v. Commissioners, 99 N. Y. 254. We have no such question here, since both statements, as well as the affidavits, were submitted to the

respondents long before the expiration of the time limited for the making of complaints. Undoubtedly, it is advisable for a relator to present his financial condition fully and accurately in his first statement. The commissioners should not be troubled needlessly, nor compelled to open again and again the question of a single assessment. Whether, in the present case, they could have refused to receive or act upon the second statement, need not be considered, since in fact they did receive and act upon it. In their return they specifically state that they took the supplemental statement under advisement, and, after consideration, "confirmed" the assessment as originally modified. In other words, they adjudged that the facts shown in the second statement did not entitle the relator to a further reduction. That fairly raises the question presented upon this appeal. We will therefore proceed to consider it.

Chapter 202 of the Laws of 1892 (amending 1 Rev. St. pt. 1, c. 13, tit. 2, art. 2, § 9) provides that, in determining the amount of a taxpayer's personal property for purposes of taxation, "no reduction shall be made or allowed for or on account of any debt or liability contracted or incurred in the purchase of nontaxable property or securities owned by him or held for his benefit." Whether the stock of the J. Otten Lithographing Company purchased by the relator was "nontaxable property or securities" is the point to be decided. The Revised Statutes provide that "the owner or holder of stock in any incorporated company liable to taxation upon its capital shall not be taxed as an individual for such stock." 1 Rev. St. pt. 1, c. 13, tit. 1. The lithographing company is a domestic corporation, liable to taxation, and it is clear that the relator was not individually and directly taxable upon the shares. But we do not think this makes the stock "nontaxable," within the meaning of the act of 1892. "Nontaxable" naturally means not taxable at all. That is not true of the capital stock of a domestic corporation. There is express provision for its taxation in the act of 1857 (chapter 456, § 3). It is true that the proper basis for taxation under this statute is the capital and surplus of the corporation, and not the value of the shares (People v. Coleman, 126 N. Y. 433, 27 N. E. 818); but this seems immaterial. Shares of stock simply represent the capital of the company, and, when that is taxed, to all intents and purposes the stock is taxed. Nor does the stockholder escape the burden. The loss may be said, theoretically, to fall upon the corporate entity, but the individual losers are the holders of the shares. Their dividends are reduced by the amount of the tax. To tax both the corporate property and the instruments representing it would be substantially double taxation, and it was doubtless this consideration which led to the insertion in the Revised Statutes of the provision above quoted. If this debt were held to be nondeductible, we should have the peculiar result that, by making a stock purchase on credit, one subjects himself to a tax which he would avoid by paying cash. If the relator had paid the $40,000 out of its funds, there can be no doubt that it would not have been individually taxable for the stock secured. Instead of that, it retained the money, and has been taxed upon it. It would be most unreasonable to hold that the

debt incurred on this account is not deductible. The transaction left the relator richer by the stock, and poorer by the debt. The stock should not be taxed, because already, in substance, taxed to the relator's detriment; and the debt should, like any other debt, be deducted because it reduces by so much the amount of the relator's net assets, upon which alone the state bases its demands.

The nontaxable property and securities intended by the act were undoubtedly those entirely exempt from taxation, such as United States and New York City bonds. This is made clear by the state of the law before the act was passed. A debt then contracted in the purchase of such exempt property was deductible, although incurred with the intention of evading the law. People v. Ryan, 88. N. Y. 143. The very section of the Revised Statutes cited as the basis for this decision is amended by the act of 1892. The change was evidently made in view of the decision, to remedy an evil against which the courts were helpless. It does not indicate an intention to vary from the long-settled policy exempting a stockholder from a direct tax upon his shares. The act of 1892 also forbids the deduction of any debt "incurred for the purpose of evading taxation," and the return states the belief of the respondents that this debt was so incurred as one of the reasons for their action. The facts alleged by them in support of this belief seem to us quite insufficient. In fact, upon our construction of the act there could be no such evasion. The statute did not mean to refuse the deduction of a debt incurred for taxable property or securities, and hence deductible, simply because the party incurring the debt thought that it was incurred for nontaxable property, and hence nondeductible.

The order appealed from should be reversed, and a reassessment directed in accordance with this opinion, with costs to the relator. All concur.