### In re L. ADLER BROS. & CO.

(Supreme Court, Appellate Division, Fourth Department. November 18, 1902.)

1. TAXATION—OATH OF ASSESSOR.
     The provision of a city charter that the oath of the assessors state that the assessment roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person or corporation named in such roll is substantially complied with by an oath omitting the words "or corporation," the word "person" being sufficiently comprehensive to include a corporation.

2. SAME—ASSESSMENT—CORPORATION.
     An assessment to a corporation under the list headed "Valuation of Personal Property" will be presumed to be an assessment of its shares of stock at actual value, as required by Tax Laws 1896, c. 908, § 12, and of its surplus, on the best information available to the assessors; the corporation not having delivered to them the written statement showing the status of its property, as required by section 27.

3. SAME—FAILURE TO DELIVER WRITTEN STATEMENT.
     Where a corporation fails to deliver to the assessors the written statement showing the status of its property, as required by Tax Laws 1896,

c. 908, § 12, the assessors need not, if they may, resort to mandamus to compel delivery thereof, but may make an assessment on the best information available.

4. SAME—COLLATERAL ATTACK.

Assessors having jurisdiction of a corporation, errors in the assessment are not jurisdictional, and, it not having delivered a statement showing the status of its property, or appeared before the assessors on grievance day and complained, and, if still aggrieved, had review by certiorari, as provided by Tax Laws 1896, c. 908, § 250 et seq., it cannot, three years later, collaterally attack the assessment in proceedings to enforce the tax.

5. SAME—WARRANT.

The warrant to collect taxes, though providing for 6 per cent. interest, instead of 5 per cent., with 12 per cent. from the day for issuing the warrant, as provided by Laws 1880, c. 14, § 119, will not be held invalid in supplementary proceedings to collect the tax, it appearing that, if the tax had been collected in the usual way pursuant to the warrant, the amount collected would not have exceeded what was legally due, and the basis for the order in supplementary proceedings under Tax Laws 1896, c. 908, § 259, being the return of the warrant for want of personal property out of which to collect it.

Appeal from special term, Monroe county.

Supplementary proceedings by John B. Hamilton, treasurer of Monroe county, for collection of a tax of L. Adler Brothers & Co. From an order denying defendant's motion to vacate the order for supplementary proceedings, it appeals. Affirmed.

The county treasurer of the county of Monroe, with the view of collecting a tax against the appellant, obtained an order in supplementary proceedings pursuant to the general tax law (Laws 1896, c. 908, § 259), requiring the officers of the defendant to appear before a referee designated in the order, and be examined concerning the property of the said corporation. An order was thereafter granted by a justice of the supreme court requiring the county treasurer to show cause at special term of the supreme court why the order in supplementary proceedings should not be vacated. The order to show cause was founded upon the affidavit of the attorney for the defendant setting forth certain alleged errors and defects in the assessment, which it is claimed rendered it void, and also attacking the manner of the attempted enforcement of the tax based upon the assessment. The court at special term declined to vacate the order.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Isaac Adler, for appellant.
William De Graff, for respondent.

SPRING, J. The counsel for the appellant adverts to several errors in the roll, which it is contended render the assessment invalid, and we will discuss them separately.

1. The oath of the assessors in verification of their work does not conform strictly to that prescribed, and for that reason the appellant urges the assessment is void. The form of the oath is prescribed by the city charter, as amended by chapter 119, Laws 1900. It is there provided that the oath shall state "that the assessment roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person or corporation named in such roll." The oath attached to the roll in question omits the words

"or corporation." It thus conforms to that required by the general tax law of the state (Laws 1896, c. 908, § 37). A correct copy of the assessment roll, made by the city assessors, is to be delivered to the board of supervisors of the county, and is made the basis of the assessment for the general tax. No other assessment is made for that purpose. We have, therefore, an oath conforming literally to that prescribed by the general tax law, and attached to a roll in assessing for general taxation, and yet it is claimed to be invalid because in one particular it fails to follow the oath enjoined upon the city assessors. Unquestionably, the oath directed in the city charter is the one to be adopted, and any substantial departure from the one formulated in it would nullify the assessment; but that deviation must be substantial and material to warrant any such decision, and especially in view of the circumstance alluded to that it complied with the oath essential to be attached to a roll prepared pursuant to the state taxing law, and for which purpose this was used. It must be obvious that the term "or corporation" is not of especial significance in the oath of the assessors. The method of assessment for general purposes in the state, county, and towns is identical with that for local purposes or improvements in the city of Rochester. It will not be pretended that a roll which omits the assessment of the personal estate of the corporations of a county or of towns is a fair or legal assessment. Nor will it stand the test if the oath attached to it is fairly susceptible of the construction that the roll does not contain a "true statement of the aggregate amount of the taxable personal estate of each and every * * * corporation" within the taxing district. Yet, if the expression "or corporation" is an essential ingredient of the oath of the city assessors, we are logically driven to the deduction that the oath accompanying the roll under the state law is flagrantly defective, and personal property of corporations may be purposely omitted therefrom, or may be unequally assessed, and the assessors would not be indictable for perjury, as their oath does not include in its compass corporate property. If the contention of the appellant is tenable, then property belonging to a joint-stock association may be omitted from the roll, and not be within the verification made by the assessors. It has become nearly an axiom that the word "person" is sufficiently elastic and comprehensive to include a corporation whenever that construction is reasonable and fairly intended. Statutory Construction Law, § 5. That is especially true in construing taxing statutes. In People v. Dederick, 161 N. Y. 195, 55 N. E. 927, the court had up for review this precise point with reference to the extension of the word "persons" in section 37 of the general tax law to include corporations, and it was held to mean them. The court say at page 205, 161 N. Y., and page 928, 55 N. E.:

"Under the statutory construction law (section 5) 'the term "person" includes a corporation and a joint-stock association.' Considering sections 21 and 37 of the tax law in connection with this provision of the statutory construction law, we are required to construe the word 'person,' as mentioned in those sections, as also meaning corporations. This construction was evidently intended by the legislature, for only one form of oath is prescribed for assessors in completing their rolls, and in that oath the term 'persons' is

used, and we cannot believe that it was intended to leave the assessment of corporations without any verification by the assessors."

2. The second ground urged by the appellant is that the assessment is invalid by reason of the fact that the corporation was assessed for its personal property, instead of upon its capital stock, as required by sections 12 and 31 of the tax law (chapter 908, Laws 1896). Upon the roll the appellant, under "Adler Brothers," and under the list headed "Valuation of Personal Property," is assessed $100,000, and the tax is carried out at $446.28. In elucidation of this assessment, Mr. Pond, one of the assessors, in his affidavit, states that the appellant did not deliver to the assessors the written statement showing the status of its property, as required by section 27 of the tax law. In the absence of this statement, the assessors made their valuation of $100,000 from other sources available to them, including the annual report rendered by the corporation and on file in the office of the county clerk. The appellant having neglected to furnish the statement referred to, the assessors were authorized to acquire whatever knowledge they might elsewhere. The delinquency of the corporation made that duty incumbent upon them. People v. Commissioners of Taxes and Assessments, 76 N. Y. 64, 75; People v. Cheetham, 45 Hun, 6. They, of course, could not be expected to permit the corporation to escape taxation. Its annual report for 1899 gave but little light as to the condition of its affairs. It did not give any clue to the amount of its "surplus profits or reserve funds" nor the amount of its debts or assets. The report for the year 1900 was still more misleading. It placed the capital stock at $760,000, "debts not to exceed" that sum, and "assets at least $760,-000." No report is produced for earlier years. These reports were not made to enlighten. They furnished as scant information as was possible and still come within the definition of annual reports. The assessors thereupon put down the sum of $100,000, and whether they intended this to be the assessment of the capital stock or of the personal property does not appear. The fact that it was under the heading "Valuation of Personal Property" is not decisive. Elevating Co. v. McNamara, 50 N. Y. 653. They were unable to conform to section 31 in detail in making this assessment, for they lacked the essential data because of the failure of the appellant. All they could do, therefore, was to assess at a fixed sum, trusting to its modification on grievance day, if erroneous, or unsatisfactory to the taxpayer. Section 12 of the general tax law requires that the shares of stock in corporations shall be assessed at actual value. Section 31 provides for the assessment of the nominal capital paid in and secured to be paid in, together with surplus profits, and is consequently inconsistent with the form prescribed in section 12. One assessment is based upon actual value, and the other the capital stock, ignoring value. The same inconsistency existed in the former statutes, but the courts held the one prescribing the actual value of the stock superseded the other, and that construction was recognized as the settled law. People v. Commissioners of Taxes of City of New York, 95 N. Y. 554; People v. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762. A similar construction has been adopted to eliminate

the contrary methods in sections 12 and 31 of the general tax law. People v. Dederick, 161 N. Y. 195–206, 55 N. E. 927 et seq. The basis of the assessment is always the company's capital and surplus, and that must be assessed at its actual value. It is to be noted that the assessors learned, as the record shows, that the appellant did not own any real estate, so that the provisions of section 31 as to the deductions to be made and the mode of assessing property of that kind are not applicable. It is fair to presume, therefore, that the assessors, from the best information available, ascertained the value of the capital stock and surplus of the defendant which in reality is its property and determined the same to be $100,000. We must assume that the assessors were cognizant of the law, and were endeavoring to follow it in the best way possible, and, for aught we know, the assessment upon the roll is a substantial compliance with the spirit of the statute.

It is asserted by the counsel for the appellant that the officers were armed with the power to compel the delivery of a written statement by mandamus. The statute gives no such remedy. If it exists at all, it must be by virtue of the inherent power in the board of assessors. The statute fixes a penalty to be visited upon the corporation for neglect to furnish this statement, and that is the limit of its punishment. In any event, there was no obligation upon the assessors to resort to the uncertain and extraordinary remedy of mandamus. The ordinary assessors would be chary about doing that. We think, however, there is still another answer to this attack upon the validity of the assessment. The assessors had jurisdiction of the corporation. Its place of business was in Rochester. Its annual reports were filed in the county of Monroe. Its capital stock was therefore properly assessable by the assessors of that city. Whatever errors there may have been in the assessment were not jurisdictional but related to the procedure. The requisite notice of the completion of the roll was given, and the review day for the hearing of complaints designated. Section 36 of the general tax law provides for the presentation of complaints on grievance day. The defendant did not appear at that time, and the assessors assumed the assessment was satisfactory to it. The statute is clear and precise in defining the remedies available to one dissatisfied with his assessment. He may appear before the assessors, and they must give him a fair hearing. If he still feels aggrieved, he may have the determination of the assessors reviewed by certiorari. Section 250 et seq., General Tax Law. If he fails to avail himself of that remedy, he may not impeach the validity of the assessment in another and collateral proceeding. People v. Feitner, 44 App. Div. 239, 60 N. Y. Supp. 614. In United States Trust Co. v. City of New York, 144 N. Y. 488, 39 N. E. 383, the court, in discussing the several provisions of chapter 269, Laws 1880, and for which the present tax law is, in a measure, a substitute, say at page 493, 144 N. Y., and page 385, 39 N. E.:

"It is necessary for the protection of the taxing officers that an attack upon their action should be limited to that which is direct, and in the nature of an appeal from it, where that action has been with jurisdiction; and the irresistible inference seems to be that, when the legislature has created a system

of procedure for the review and correction of assessments, as it has by the act of 1880, it was intended to be an exclusive one."

This assessment was completed, and the grievance day had in 1899, and for nearly three years the corporation has remained acquiescent, confirming this assessment by its long delay. People v. Tax Commissioners, 99 N. Y. 254, 1 N. E. 773. The counsel for the appellant, in his brief, refers to a large number of cases wherein title to land or property was endeavored to be acquired by tax title. A stringent rule prevails in a case of that kind, and the holder of the tax deed must show a strict compliance with the requirements of the statute, both as to the assessment and the sale following the nonpayment of the tax. Thompson v. Burhaus, 61 N. Y. 52–65; In re Vieth, 165 N. Y. 204, 58 N. E. 886. The holder of the tax deed obtains his conveyance for a small sum, and the courts, of necessity, are driven to exacting a somewhat technical adherence to the taxing statutes by him before permitting the owner by descent or purchase to be devested of his title and dispossessed of his premises. The facts in this case make it the easier for us to hold the company strictly to its statutory remedy. Its officers were in fault in neglecting to furnish the assessors the information necessary to make a more acceptable assessment than appears upon the roll. The assessors acted from the best lights they had. The appellant was derelict and unmindful of its rights in failing to make its complaints to the assessors on their review day. For nearly three years they have allowed the assessment to remain unquestioned, and only sought to assail it when the enforcement of the tax was imminent. Even now it presents no tangible suggestion that the assessment is excessive, or that it is unequal, or unfair in any particular. If it ever had reasonable ground for complaint, it has long since overrun its last day of grace.

3. The remaining ground urged by the learned counsel for the appellant does not pertain to the assessment, but to the validity of the warrant upon which the order appealed from is founded. The appellant not having paid its tax on the 15th of April, 1900, the county treasurer issued his warrant to a collector to collect it with interest at 6 per cent. The rate of interest prescribed by section 119 of chapter 14 of the Laws of 1880, which is controlling, is 5 per cent., and also 12 per cent., per annum from the said 15th day of April, which is the day the warrant is to be issued by the provisions of the statute. The reason assigned for the variance from the statute is found in the affidavit of the treasurer, and it shows the ordinary practice was followed in the form of this warrant. According to his affidavit, if the tax had been collected in the usual way, pursuant to the warrant, the amount collected would not have exceeded what was legally due. The variance, therefore, was more formal than real. The collector presented the warrant to the officers of the appellant, and they declined to pay because the tax was excessive. They found no fault with the warrant nor with the rate of interest charged. They did not, in fact, pay anything, or tender the amount due, or any other sum, and no levy was made upon their property. Had they offered to pay the exact sum with 5 per cent. interest, probably it would

have been a defense against a proceeding to enforce collection for a larger sum. Beyond that, the warrant was returned "for want of personal property out of which to collect the same," as required by the statute, and that makes the basis for the order in proceedings supplementary to execution. Section 259, General Tax Law. In the cases cited upon the brief of the appellant's counsel the collector had made a levy and was attempting to enforce payment for more than the statutory rate. In the present case no more can now be collected than the statute authorizes. The order should be affirmed, with $10 costs, and the disbursements of this appeal.

Order affirmed, with $10 costs, and disbursements. All concur.