·104 240
'115 181
115 182
104 240
126 446
104 240
129 566
104 240
152 495

The People ex rel., The Panama Railroad Company, Appellant *v.* The Commissioners of Taxes of the City of New York, Respondent.

Under the act of 1857 (Chap. 456, Laws of 1857), in reference to the assessment of taxes on corporations, the capital stock of a corporation, less the part thereof owned by the State or by literary or charitable institutions, or exempted from taxation by the Revised Statutes (1 R. S. 388, § 4), is to be assessed at its actual value, whether more or less than its nominal amount, deducting, however, therefrom the assessed value of its real estate and shares owned by it in other taxable corporations, and, also, from its surplus or reserved fund, if any, an amount not exceeding ten per cent. of its capital.

Where a corporation, liable to taxation under said act, has real estate in another State or country, the provision directing a deduction of the assessed value of such real estate requires that the deduction shall be measured by its actual value, and, in the absence of other and better evidence, the price paid for the real estate may be taken as representing such value.

It is incumbent upon a corporation, before it is entitled to call upon the court, to correct an assessment by increasing the sum to be deducted for the value of its real estate, to give evidence and furnish *data*, showing that the actual value exceeds the sum fixed by the assessors. It is not enough that the evidence raises a doubt or permits a conjecture that injustice may have been done.

The franchise of a corporation is not, within the tax laws, to be reckoned as realty. (1 R. S. 387, §§ 1, 2).

*It seems,* that corporate franchises are not, on general principles, to be considered as real property.

The commissioners of taxes, of the city and county of New York, in assessing the capital stock of relator, a domestic corporation, operating a railroad across the Isthmus of Panama under its charter and a grant of an exclusive right to construct and operate such a road, fixed the value of its real estate on the Isthmus at the amount paid out by it therefor, and in the construction of its road. The relator proved its net income for three years, including the one for which the assessment was made, and showed that the average income of those years capitalized, would produce a sum much larger than the value as so fixed by the commissioners. The relator claimed, that, by deducting from this sum the actual value of its personalty, the residue represented the value of its real estate. *Held,* untenable; that the value of the franchises of the corporation was an important element in determining the value of its road as a whole, or of its capital stock; that as the income of the relator is derived not only from the use of the real and personal property, but,

Statement of case.

also, from its franchises, it is impossible to ascertain, from proof of the income alone, the value of either element entering into the aggregate value of the corporate property; and therefore the evidence afforded no legal basis upon which the court could change or reduce the assessment.

(Argued November 23, 1886: decided February, 1, 1887.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made March 26, 1886, which affirmed an order of Special Term, dismissing a writ of *certiorari*, brought to review an assessment made by defendant, of the capital stock of the relator, a New York corporation, for the year 1882.

The material facts are stated in the opinion.

*William G. Choate* for appellant. The relator is entitled to show the actual value of its real estate, situated in the United States of Colombia. (95 N. Y. 562.) The testimony of the witness McCullough, taken by the referee and reported to the court, was competent evidence of the actual value of the real estate of the relator, and being uncontradicted and unimpeached, and not improbable in itself, the court was bound to give effect to it. (*People* v. *McCarthy*, 102 N. Y. 639; *Lomer* v. *Meeker*, 25 id. 361; *Elwood* v. *W. U. Tel. Co.*, 45 id. 549; *Koehler* v. *Adler*, 78 N. Y., 287.) The case is clearly one within the remedial scope of the act of 1880, chapter 269. (*People ex rel. Twenty-third St. R. R. Co.* v. *Com'rs of Taxes*, 95 N. Y. 554.)

*James C. Carter* for respondent. A party complaining of an assessment, cannot omit to avail himself of his opportunity to remedy his grievance by an application to the tax commissioners, and then, after the assessment has been confirmed by lapse of time, seek to arrest the collection of the tax, by a proceeding under the act of 1880. (*People ex rel. Mut. U. Tel. Co.* v. *Com'rs of Taxes*, 99 N. Y. 254.) By the writ of *certiorari* no error can be reached and corrected, unless it appears by the return to the writ. (*People ex rel. Becker* v. *Burton*, 73 N. Y. 452; *People ex rel. Sims* v. *B'd of Fire*

*Com'rs*, 73 id. 437; *People ex rel. McCarthy* v. *French*, 25 Hun, 11.) For the purposes of deducting the actual value of the real estate, the assessed value of the real estate, when obtainable, is taken as the actual value. When not obtainable, such actual value must be proved by other means, ordinarily by the amount paid for it. (*People ex rel. Twenty-third St. R. R. Co.*, v. *Com'rs of Taxes*, 95 N. Y. 554; *Monroe Co. B'k.* v. *City of Rochester*, 37 N. Y. 365; *Mayor of Mobile* v. *Stein*, 54 Ala. 23; *Spring Valley W. Works* v. *Schotler*, 62 Cal. 69; *Mayor* v. *Balt. & O. R. R. Co.*, 6 Gill [Md.], 288; *Porter* v. *R. R. I. & S. L. R. R. Co.*, 76 Ill. 561; *Belo* v. *Com'rs Forsyth Co.*, 82 N. C. 415.) As an appendix to the respondent's points in *People ex rel. Twenty-third St. R. R. Co.* v. *Com'rs of Taxes* (95 N. Y. 554), are attached.

ANDREWS, J. The general rule for the taxation of corporations liable to taxation on their capital is prescribed in section 3, chapter 456, of the Laws of 1857, as follows: " The capital stock of every corporation liable to taxation, except such part as shall have been excepted in the assessment-roll, or as shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county." The words in this section, " except such part of it as shall have been excepted in the assessment-roll," are taken from section 10, title 4, of chapter 13 of the Revised Statutes, entitled " of the assessment and collection of taxes," and probably refer to stock of the corporation taxed, belonging to the State, or incorporated literary or charitable institutions, which the assessors by section 6, were required to specify in the fourth column of the assessment-roll and deduct from the amount of the capital stock. (See COMSTOCK J.; *People* v. *Commissioners of Taxes*, 23 N. Y. 192–223.) The further

exception in the act of 1857, of such part of the capital stock " as shall have been exempted by law," refers to the general exemption in section 4, title 1, of the same chapter of the Revised Statutes. (See DENIO, J., 23 N. Y. 195.)

Under the act of 1857, as now construed, the capital stock of a corporation, less the part thereof wned by the State, or by literary or charitable institutions, or exempted from taxation by the Revised Statutes, is to be assessed at its actual value, whether more or less than its nominal amount, deducting, however, from such actual value, the assessed value of its real estate and shares owned by it in other taxable corporations, and also from its surplus or reserved funds, if any, an amount not exceeding ten per cent of its capital. (*Oswego Sturch Factory* v. *Dolloway*, 21 N. Y. 449 ; *People ex rel., Twenty-third St. R. R. Co.* v. *Commissioners of Taxes,* 95 id. 554.)

We understand it to be conceded by the learned counsel for the relator, that the Panama Railroad Company is subject to taxation under the act of 1857. It is a New York corporation operating a railroad across the Isthmus of Panama, under its charter and as assignee of a grant or concession to certain individuals of an exclusive right to construct and operate a railroad across the Isthmus, granted by the Republic of New Granada, and has its principal office and place of business in the city of New York. The question raised relates to the assessment of the corporation in the city of New York for the year 1882, and the specific and sole controversy upon the merits, is whether, upon the return to the *certiorari*, and the evidence taken in the proceeding under the order of the court, the commissioners of taxes, in making the assessment, deducted, from the actual value of the capital stock of the relator, the full value of its real estate. The nominal capital stock of the corporation is $7,000,000. The commissioners fixed its actual value at the rate of one hundred and four per cent above its par value, making in the aggregate, $14,280,000. From this aggregate they deducted $700,000, being an amount equal to ten per cent. of the capital. They made a further deduction of $8,922,870, the amount which the relator had paid out for

its real estate on the Isthmus. There remained, after making these deductions, the sum of $4,657,130, which sum was fixed by the commissioners as the amount of the assessment.

There was no error in the mode adopted by the commissioners of taxes in ascertaining the amount of the capital stock of the relator liable to assessment. It is true that the deduction on account of the real estate is not, in terms, of the assessed value. The legislature, in directing a deduction of the assessed value of the real estate, doubtless had primarily in view strictly domestic corporations carrying on business in this State, and whose real estate was located therein, and, therefore, subject to our assessment laws. But the assessed value of real estate is in theory its actual value, and where a corporation, liable to taxation, under the Law of 1857, has real estate in another State or country, the just construction of the statute, as applied to a corporation so situated, requires that the deduction shall be measured by its actual value; and the price paid for the real estate, in the absence of other and better evidence, may be taken as representing such value (EARL J., in *People ex rel.* v. *Com'rs of Taxes*, 95 N. Y., 554, 562.) It is insisted, however, that it was proved, by uncontradicted evidence, that the relator's real estate on the isthmus was worth at least the sum of $15,000,000, a sum more than sufficient to offset the value of the capital stock of the company as ascertained by the commissioners, and which, if allowed, would have prevented any assessment whatever. This contention proceeds, we think, upon a false theory adopted by the relator for ascertaining the value of its real estate. The real estate consisted of a road-bed across the isthmus, one hundred feet wide, of real estate used for terminal facilities at Aspinwall and Panama, with the structures thereon, and of alternate sections of land on the line of the relator's road, granted by the local government. The cost of all the real estate purchased by the relator, was comparatively trifling, and the land granted by the government was, as appeared, of very little value. The sum of $8,972,879, deducted by the commissioners of taxes, as the amount paid

for real estate, represented in most part the sums expended by the relator in the construction of its road. There was no evidence given of the market value of the real estate at the time of the assessment. The sole proof upon which the relator rested its case was this: The relator proved the net income of the company from its traffic and business in 1880, 1881 and 1882. This was followed by showing that the average income of those years capitalized, would produce a sum exceeding $15,000,000. The actual value of the locomotives, cars, equipment and other personal property of the company, was shown in round numbers to be $1,000,000. It is assumed, from these premises, that the sum of $15,000,000 represents the actual value of the real and personal property of the railroad company, and that the value of the real estate separately, is ascertained by deducting from the aggregate value, the sum of $1,000,000, the value of the personal property. The evidence above referred to, is supplemented by proof that in 1881, a contract was entered into by the relator and its stockholders, for the sale to the Inter-Oceanic Canal Company, of a large part of the shares in the relator's company, at the price of $250 a share, reserving to the old stockholders the money, personal securities and surplus belonging to the relator. It is also to be mentioned that the president of the relator testified in general terms that the real estate of the company was worth $15,000,000, but this estimate, as subsequently explained, was based on the theory of capitalization of the income, to which we have referred.

We are of opinion that the evidence given afforded no legal basis upon which the court could change or reduce the assessment, or upon which it could find, as matter of fact, that the actual value of the real estate exceeded the sum allowed by the commissioners of taxes. It is unquestionable, that the value of the real estate of a railroad corporation, its road-way, tracks, structures, lands, and whatever is known as realty, enters into and forms a constituent element in the aggregate value of the capital stock. This is true of every species of

property having a value, owned by the corporation, whether real, personal, or mixed. But it is equally true that the value of the franchise of the corporation, is an important element in determining the value of a railroad as a whole, or the value of its capital stock. This is especially true when the franchise is an exclusive one, covering an important and necessary line of com-. munication. It is impossible to doubt that the exclusive franchise of the Panama Railroad Company to construct and operate a railroad across the Isthmus of Panama, was a most important constituent in determining the value of the corporate property. It insured its productiveness and the continuance of a large income to the company from the operation of the road. The rental value of real estate is frequently resorted to as a guide in fixing its aggregate value. In many cases it is a reasonable assumption that real property is worth a capital sum equal to that represented by the capitalization of its ordinary net rental. So, also, the property of a railroad corporation may be worth a sum capitalized on the basis of its average income and earning capacity. But since the income is derived from the use of its real and personal property, and also of its franchise, it is manifestly quite impossible to ascertain, from proof of the income alone, the value of either element entering into the aggregate value of the corporate property. While it is not an unreasonable supposition that the real estate owned by the relator may be of greater value than the sum expended in its purchase and improvement, yet the relator gave no evidence upon which the court could determine that its actual value exceeded that sum, or as to the proportion the value of the real estate bore to the whole value of the corporate property. It was incumbent upon the relator, before it was entitled to call upon the court to correct the assessment, by increasing the sum to be deducted for the value of its real estate, to give evidence and furnish data showing that the actual value exceeded the sum fixed by the commissioners, and this the relator failed to do. (See *People ex rel.*, *West F. I. Co.* v. *Davenport*, 91 N. Y., 574, 581, 583.) It was not enough that the evidence raised a doubt or permitted a con-

jecture that injustice may have been done. There would be less difficulty in the relator's case, if it could be successfully claimed that the franchise of the relator was, within the tax laws, to be reckoned as a part of the realty. On general principles corporate franchises are not real property. They are classed as incorporeal hereditaments, though, as stated by Chancellor Kent (3 Kent, 459), with some impropriety, as they have no inheritable quality. They are defined by Clifford, J., in *Society of Savings* v. *Coite* (6 Wall. 594, 606), as " legal estates vested in the corporation as soon as it is *in esse.*" They are as varied as the purposes for which corporations are created. The relator, by its charter, was authorized to construct a railroad across the Isthmus of Panama under a grant made by the Republic of New Granada to certain individuals, and to that end to purchase the rights, privileges and immunities of the grantees under the grant. A franchise granted to a corporation to construct a railroad between certain termini, vests the moment the corporation is created. It may at that moment be of very great value, although the corporation owns not a foot of land and has not expended a dollar in money. When the road *is* constructed the franchise secures to the corporation the right to operate its road under the conditions and with the privileges conferred by the charter. But this does not give to the franchise the character of realty. It is an incorporeal right, annexed in some general sense to the road, when constructed, but is not a part of the land, nor an interest in land, although it may give to the land a greater value than it would otherwise have had. (See *Commonwealth* v. *Hamilton Manufacturing Company*, 12 Allen, 298.) But, independently of these general considerations, it is clear that under the definitions contained in the statutes of the State regulating taxation, the value of the relator's franchise cannot be included in the valuation of its real estate for the purpose of ascertaining the deduction to be made under the act of 1857. It is declared, in the first section of the chapter of the Revised Statutes relating to taxation (chap. 13,

tit. 1, § 1), that "all lands and personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." The second section declares that "the term 'land,' as used in this chapter, shall be construed to include the land itself, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, quarries and fossils, in and under the same, except mines belonging to the State; and the terms 'real estate' and 'real property' whenever they occur in this chapter shall be construed as having the same meaning as the term 'land,' thus defined." Section 3 declares that "the terms 'personal estate' and, personal property,' whenever they occur in this chapter, shall be construed to include all household furniture, moneys, goods, chattels, debts due from solvent debtors, whether on account, contract, note, bond or mortgage, public stocks and stocks in moneyed corporations. They shall also be construed to include such portion of the capital of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate." It seems to admit of no doubt that the term "land," as defined in the second section does not include the franchise of a corporation. The act of 1857 does not enlarge its meaning as defined in the Revised Statutes. It simply makes the assessed value of the real estate the basis of deduction in place of the amount paid therefor, as provided in the prior law (Chap. 13, tit. 4, §§ 2, 6.) It is well recognized that corporate franchises may be made distinct subjects of taxation. They are regarded in tax laws as personal property, and are frequently so declared, as in chapter 761 of the Laws of 1866, in respect to the taxation of savings banks.

We have, for the reasons suggested, reached the conclusion that neither upon the facts presented to the commissioners of taxes, nor upon the additional evidence, was it made to appear that any error was committed by the commissioners in fixing the value of the real estate of the relator at the sum paid therefor. It must, however, be admitted that the rule

of assessment and taxation declared in the statute of 1857, as applied to the relator, operates harshly and unequally. In respect to domestic corporations conducting their business and having their property within the State, it is just and equitable. The whole property of corporations so situated have the protection of our laws, and they are justly taxable upon its entire value, and double taxation cannot ordinarily happen. It can never happen except where some portion of their personal estate may be in another State or country, and is taxable under the laws of the foreign jurisdiction, a condition of things which would not ordinarily exist. In case the assessed value of the real estate of such corporations is more than its actual value, it results in a diminished taxation of its capital stock. If it is less, the equilibrium is restored by an increased taxation of its capital. So that practically the tax is levied only on the actual value of the property of the corporation within the State. But the relator stands in quite a different situation. It is liable to taxation on its real and personal estate in New Granada, and the case shows that nearly its whole property, real and personal, is within that jurisdiction, and that it pays an annual subsidy to that government of $250,000, in lieu of taxes on its real estate, immunities and personal property. The injustice of taxing the corporation here, under the rules established by the act of 1857, is apparent. It results in double taxation on a great share of its taxable property, which is contrary to all just principles of taxation. It would seem that a franchise tax, and a tax on its real estate and its tangible personal property having its actual situs within our jurisdiction, and its credits, is all that in justice the State should exact from the relator as its contribution to the public burdens, and as the equivalent for the protection afforded. The act (Chap. 468 of the Laws of 1881) " to authorize, the formation of corporations for the purpose of acquiring, constructing and operating railroads in foreign countries," expressly provides (§ 13) that corporations, formed under the act, shall be " subject to taxation upon the amount of the real or personal

property owned by such corporations within this State." It is not important to determine in this case whether this section was intended to abrogate the general rule prescribed by the act of 1857, as to corporations organized under the act of 1881. If so intended, it would seem to be a just rule to apply to the relator. But the remedy is with the legislature. It is only when a tax law transcends the legislative power that courts can interfere. This is not claimed in respect to the act of 1857. (See *People ex rel. Griffin,* v. *Mayor, etc.,* 4 N. Y. 419; *People ex rel. Jefferson* v. *Smith,* 88 id. 576; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *People* v. *Gold & Stock Tel. Co.,* 98 N. Y. 67.)

We do not understand the position that the act of the commissioners will subject the relator to a tax for State purposes, contrary to the provisions of chapter 361 of the Laws of 1881. The commissioners simply fixed the amount upon which the relator was taxable. They did not, so far as appears, lay a tax or determine for what purpose taxes might be levied.

Having reached a conclusion adverse to the relator on the merits, it is unnecessary to consider the questions of form and remedy argued by counsel.

The order appealed from should be affirmed.

All concur, except RUGER, Ch. J., and RAPALLO, J., dissenting.

Order affirmed.