(19 App. Div. 590.)

### PEOPLE ex rel. BROOKLYN CITY R. CO. et al. v. BOARD OF ASSESSORS OF CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department.  July 7, 1897.)

1. TAXATION—RAILROAD COMPANY—FRANCHISE.
    Franchises of a railroad company are not liable to local taxation.

2. SAME—PERSONALTY.
    A street-railroad company whose indebtedness exceeds the value of its personal assets other than its franchise is not liable to assessment for personalty.

3. SAME—REASSESSMENT.
    A reassessment may be ordered to determine the application of money shown to be borrowed by a railroad company a few years prior to an assessment for taxation.

Appeal from trial term.

Certiorari by the people, on the relation of the Brooklyn City Railroad Company and another, against the board of assessors of the city of Brooklyn.  From an order vacating an assessment on the capital stock of the relator, and directing a reassessment thereof, the board of assessors appeals.  Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Rollin A. Breckinridge, for appellant board of assessors.

Henry Yonge, for relator.

CULLEN, J.  This controversy proceeds from the struggle that still exists by the boards of assessors of various cities to continue to tax the capital stock of corporations under the method that generally, if not uniformly, prevailed throughout the state until the decision in the case of People ex rel. Union Trust Co. v. Coleman, 126 N. Y. 448, 27 N. E. 818, and the various cases in the court of appeals following that decision.  Before the decision of the Union Trust Company Case it had been the rule with assessors, where the share of the stock of a corporation sold at or above par, to treat that fact as conclusive evidence that the capital stock had not been impaired, and, in assessing the corporation for personalty, to deduct only its real estate, the amount of stock held by it in other corporations, and the amount of its stock held by charitable, literary, and eleemosynary institutions.  The decision cited overthrew this rule, and worked a revolution in the method of assessing corporations, and the extent of their liability to local taxation.  The capitalization of corporations and the market value of their shares of stock depend largely on their earning power.  In the Union Trust Co. Case it was held that these were not the subject of consideration in assessing the corporation, but that it was to be assessed only for actual capital or property owned by the corporation.  In People v. Barker, 146 N. Y. 304, 40 N. E. 996, this doctrine was carried further, and the franchises of a street-railway company held exempt from local taxation.  In the case of People v. Neff, 15 App. Div. 585, 44 N. Y. Supp. 810, though, of course, following the decision of the court of last resort, and holding the franchise of that company exempt from assessment, we suggested that there

might be a marked distinction between the franchise to construct and operate a railway on a street, which franchise is absolute property, independent of the existence of the corporation, and other corporate franchises, such as those of trading companies, which are merely to be a corporation, and to do business. In the case of Railroad Co. v. Kennedy, 15 App. Div. 588, 44 N. Y. Supp. 825, we held that though the plaintiff had not laid a rail, nor entered upon the street, its franchise was as absolutely property as the land abutting on the street, and that the former could be no more taken for public purposes, without compensation, than the latter. This was the law laid down in the case of Suburban Rapid Transit Co. v. City of New York, 128 N. Y. 510, 28 N. E. 525; and, except to satisfy the litigants then before us that the case had been considered, it would have been unnecessary to have done more than to refer to the very clear opinion of the able judge who wrote in the case cited. But recently the question has again come before the court of appeals, in the case of People v. Barker, 152 N. Y. 418, 46 N. E. 875, and People v. Clapp, 152 N. Y. 490, 46 N. E. 842; and again the law has been declared that franchises of a railroad cannot be assessed for taxation. This, of course, has ended all our speculations or suggestions. It is therefore now settled law that corporations have two classes of property,—one subject to local taxation, and the other wholly exempt from it; for the taxation under chapter 361, Laws 1881, is, by express terms, solely for state purposes. This being the law, there should no longer be any attempt to avoid it, or to tax property that is exempt. If the law is just, every one should favor it. If it be unjust, the only remedy is by application to the legislature to alter it, for it is unquestionably within the power of the legislature to subject this character of property to the same public burdens which other property within the state has to bear (Henderson Bridge Co. v. Kentucky, 166 U. S. 150, 17 Sup. Ct. 532),—a burden which for over 40 years corporations have borne without cavil or complaint, and without suggestion that it was not imposed on them by law.

It is necessary to examine the return of the relator and the evidence of its president, and see, first, whether that evidence affords any authority for the imposition of a tax on the relator for personalty, and, second, whether the evidence is of such a nature as justified the board of assessors in disregarding it. The return and statement were to the effect that the capital stock of the corporation was $12,000,000, and was all paid in; that the actual value of all the assets of the corporation was $8,079,271.82; that the assessed value of its real estate, including its tracks, was $5,471,570; and that its indebtedness was $6,925,000. The sum of those last two items, which the relator was entitled to deduct from the value of its assets, is $12,396,570. The result is that the relator's property stands $4,317,298.18 below the point at which it would be liable for any assessment for personalty. The items of the assets are given with the greatest detail, and the basis of the valuations of such items stated with the greatest particularity. I cannot find that these statements are in any wise impeached. It is neither alleged nor shown that the relator owns any other property than that returned, or that the value of any particular

piece of property is underestimated. The details of the return are criticised but in one respect, which I will allude to hereafter. It is, however, sought to impeach the credibility of this return, by showing the financial condition of the company. The roads of the company and its property are leased to the Brooklyn Heights Railroad Company, which agrees to pay as net rental, over the taxes, etc., 10 per cent. on the capital stock of the lessor, and also the interest on its bonds. For the market value of the shares of stock, the president of the relator refers to their financial reports of the day. These show that the stock sells above 180 per cent. It is insisted that the statement that the company has only $1,150,000 assets in excess of its liabilities is not to be credited, in the face of the fact that the market value of the whole stock exceeds $21,000,000.

In this connection is cited the remark of Judge Andrews in People v. Barker, 144 N. Y. 94, 39 N. E. 13:

"But an unimpaired capital implies that there are assets over and above the capital sufficient to pay any outstanding debts; and if the commissioners had a right to find, as they did, that the capital of the relator was unimpaired, they were not bound to deduct the debts, since, presumably, they were offset by assets above the capital which otherwise would have been liable to taxation."

There is undoubtedly great force in this argument, and it would be unanswerable were it not borne in mind that there is a distinction between the two kinds of assets. If all the assets of this company were only $1,150,000, it would be incredible that any amount of business skill, or any peculiar use of those assets, would make the stock of the company worth in excess of $20,000,000. But there is another asset of the company which it has not returned to the assessors, and which, as we have already seen, under the authorities, the law does not require it to return; that is, the franchise of maintaining and operating railroads on some 60 miles of the streets of the city of Brooklyn. This asset may be of sufficient·value to warrant even a greater market price for the stock of the relator than that which now obtains. It is also to be remembered that this remark of Judge Andrews was made at an early period in the evolution of the present doctrine of taxation, and before that doctrine was fully developed, and when the franchises of corporations, though not in name, still in fact, were taxed,—a rule which the learned justice himself had upheld in the case of People v. Commissioners of Taxes, 104 N. Y. 240, 10 N. E. 437.

The appellants criticise the refusal of the president, when on·the stand, to fix the value of the franchise, and insist this is ground for objecting to the reliability of his testimony. We see no force in this criticism. Franchises, at least such as those of the character of that of this relator, are not the subject of purchase and sale in the market. Their value is to be estimated from the facts shown surrounding them. If it was stated truly that the net assets were $1,150,000, and the market value of the stock $20,000,000 in excess of those assets, in a time of no particular speculation in the stock, I should say that the value of the franchise was about $20,000,000. But that is a subject on which men differ, and each one is at liberty to form his own judgment. Having the facts before them, the assessors

were as competent to form a judgment on this subject as the relator. There is a difference in the figures of the president, Mr. Rossitter, and those of Mr. Swim, the secretary, of about $400,000 in the aggregate results. It may be that the evidence does not satisfactorily explain this difference. Certainly, on account of the extent of the statements, I have not been able to find out from what particular items it proceeds, nor have the counsel pointed it out to us. This discrepancy not being satisfactorily explained, the relator should be charged with it. But the discrepancy gives no authority for assessing the relator for over $4,000,000 of personalty. Even with the charge of $400,000, the relator is still far below the assessment line. We are of opinion, therefore, that the special term properly vacated the assessment.

We think that the order directing a reassessment also was properly made. The relator borrowed $6,000,000 some few years ago. The assessors asked for the details of the expenditure of that sum. This the witness was unable to give, but referred the assessors to the books of the corporation, which he stated he would produce. The books of the company were not, in fact, produced. These the assessors were entitled to examine, to see how the capital of the corporation and money borrowed by it were expended, because the details of such expenditures might show the existence of personal property not returned to the assessors. The president of the relator is hardly subject to criticism in not producing the books, because there seems to have been no subsequent application for them. The matter seems to have been left inchoate and undetermined. We therefore think it wise that there should be a rehearing before the assessors, on which they may probe the returns of the company to any further extent that they may desire, and obtain any further evidence as to the assets of the corporation. But the assessment must be laid in accordance with the law, and the fact that the justice or the favor of the statutes of the state, as construed by the courts, renders this relator subject to local taxation on some $5,000,000, and it exempts it from taxation on over $15,000,000, does not justify an attempt to value the latter class of property as part of the former.

The order appealed from should be affirmed, without costs to either party. All concur.