368 PEOPLE ex rel. BKLYN. UNION GAS v. FEITNER.

SECOND DEPARTMENT, APRIL TERM, 1903. [Vol. 82.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BROOKLYN UNION GAS COMPANY, Appellant, v. THOMAS L. FEITNER and Others, Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

*Tax — assessment therefor against a gas company — a verified report of its treasurer prevails over inferences of the assessors where they fail to require an examination of the officers and books of the corporation.*

Upon an application to the board of taxes and assessments of the city of New York for the cancellation of an assessment against a corporation, the corporation submitted a statement made and verified by its assistant treasurer to the effect that the actual value of its gross assets was $22,037,486. This statement was not impeached in any way. It appeared, however, that the paid-up capital stock of the corporation was $15,000,000 and that the corporation had issued $15,000,000 in bonds, no part of which had been used in the purchase of nontaxable property; that the capital stock of the corporation was worth not less than par and that a six per cent dividend had been declared thereon and that the interest on the bonds was not in arrears.

The commissioners inferred from these facts that the assets of the company had been increased by the amount of the issue of bonds, and on this theory determined that the actual value of the gross assets of the corporation was $30,000,000.

*Held,* that the inference drawn by the commissioners had no sound basis as against the assistant treasurer's verified statment of the actual value of the assets;

That, as the commissioners did not exercise their prerogative and require an examination of the officers and books of the corporation, they were bound to assume that the value of the gross assets was correctly given in the statement filed with them. (Per GOODRICH, P. J., and WOODWARD, J.)

BARTLETT and HIRSCHBERG, JJ., concurred in result.

APPEAL by the relator, The Brooklyn Union Gas Company, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 29th day of January, 1902, dismissing the above-entitled proceeding.

*William N. Dykman,* for the appellant.

*George S. Coleman,* for the respondents.

GOODRICH, P. J.:

The relator, The Brooklyn Union Gas Company, appeals from an order dismissing a writ of certiorari to review an assessment and

valuation of its property made in 1900. It is alleged in the petition that between January and May, 1900, the assessors completed their valuations of taxable property in the borough of Brooklyn. The return shows that in such valuation the commissioners "assessed the personal estate (capital stock) of the relator for the year 1900 at the sum of $5,000,000, and the real estate of the relator, consisting of service pipes, for said year, at the sum of $135,000." The relator, being aggrieved by the valuation, applied to the commissioners to have the assessment canceled, and on such application filed a statement of its condition, which consisted of answers to questions propounded by the commissioners on a blank prepared by themselves. After reconsidering their assessment, the commissioners assessed the relator on the following basis:

" Actual value of total gross assets... ............ $30,000,000
" Deductions:
    " Debts..... ..................... $15,479,011
    " Special franchise.................. 8,317,370
    " Assessed value of real estate........ 4,028,150
    " Stocks of other corporations ....... 939,069

     " Total deductions........................ 28,763,600

     " Taxable balance ........ ... ............. $1,236,400 "

They also assessed the relator's service pipes to houses of customers, as distinguished from the mains, at $135,000.

The relator applied on petition for a writ of certiorari to review the proceedings, and claimed that, as there was no other testimony before the commissioners except the relator's statement, which contained the following items, their valuation should have been as follows:

Total gross assets................................ $22,037,486

Deductions less mains.................... $2,025,000
Debts......................................... 15,479,011
Real estate at assessed value............. 4,028,150
Stock in other corporations.............. 939,069
                           $22,471,230

which would show no taxable valuation.

In their return the commissioners alleged the theory and method of their assessment as follows :

" With respect to the assessment of the personal property (capital stock) of the relator for the year 1900, we determined the assessable value thereof as follows : From the statement in writing submitted to us as aforesaid, a copy of which is hereto annexed as Schedule A we ascertained that the capital stock of the relator actually paid in, or secured to be paid in, was $15,000,000 ; that the rate of dividend for the last preceding year or the last annual dividend was six per cent. ; that the indebtedness of the relator amounted to $15,479,011, in which sum was included an indebtedness of $15,000,000 on mortgage bonds; that no portion of the above indebtedness had been contracted or incurred in the purchase of non-taxable property or securities ; that the amount invested in the stocks of other corporations taxed upon their capital was $939,069, which statements of fact we accepted as true.  *  *  *

" From the fact that the relator had issued bonds to the extent of $15,000,000, and that no portion of such indebtedness had been contracted or incurred in the purchase of non-taxable property or securities, we inferred that the said sum of $15,000,000 represented by said bonds had been applied to the property of the relator in addition to the sum of $15,000,000 actually paid in or secured to be paid in as capital of said relator, so that the actual value of the assets of the relator was, in our opinion, at least $30,000,000 on the second Monday of January, 1901. This opinion was confirmed by the fact that the share stock of the relator, at the time the assessment complained of was made, had a market value far in excess of the nominal or par value of such stock, and by the further fact that the relator had declared a dividend of six per cent. on the par value of the stock and that no arrearage of interest was alleged upon the mortgage bonds. Our opinion as to the actual value of the capital stock was further confirmed by the fact that although invited so to do by the printed blank submitted to the relator for the purpose of showing its condition on the second Monday of January, 1900, the relator did not claim the stock of the company was worth less than par, or that any part of the value of its capital of $15,000,000 was represented by franchise."

After hearing the parties the court made an order confirming the

assessment. This order contains the following statement of the grounds of the denial: "it not appearing to the court that the assessments complained of are illegal or erroneous or unequal for any of the reasons alleged in the petition." From this order the relator appeals.

The petition alleged that "the said assessment of its (relator's) personal property is illegal and erroneous and should be cancelled." Respondents contend that the petition did not contain an allegation requiring the interference of the court under section 906 of the Greater New York charter (Laws of 1897, chap. 378) and section 250 of the Tax Law (Laws of 1896, chap. 908), which require the party aggrieved to specify the particulars or grounds of the alleged illegality or overvaluation or the extent of such overvaluation. But we are of opinion that in subsequent clauses the petition fully met the requirements of these sections.

The question before us is whether the method adopted by the commissioners was legal ; whether the valuation was fairly deducible from the evidence before them. The assessment was made under section 12 of the Tax Law (*supra*), which reads as follows: "The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value."

It was said by Judge FINCH in *People ex rel. Edison General Electric Co.* v. *Barker* (141 N. Y. 251, 255): "The duty of the tax commissioners is not to subordinate facts, fairly disclosed and uncontradicted, to the influence of presumptions amounting to little more than a guess or possibility, but to deal with them fairly and intelligently. These officers are armed with power to ascertain the truth of answers given to their formal inquiries.  *  *  *  If they were dissatisfied with his (the treasurer's) valuation of assets in gross, they could have required them to be given in detail and so been enabled to judge of the fairness or unfairness of the valuation."

We held, in *People ex rel. Brooklyn R. R. Co.* v. *Neff* (19 App.

Div. 590; affd. on opinion below, 154 N. Y. 763), that where the paid-up capital of the corporation was $12,000,000 and the actual value of all its assets was $8,000,000, and the lawful deductions therefrom for real estate and debts exceeded that sum, the corporation is not taxable for personal estate, notwithstanding the fact that the market value of its stock was $180.

In *People ex rel. Union Trust Co.* v. *Coleman* (126 N. Y. 433) Judge FINCH distinguished between the capital stock of a corporation and its share stock. He pointed out that the capital stock represents simply capital existing in money or capital or both, owned by the corporation, while the share stock represents not simply existing and tangible capital, but also surplus, dividend-earning power, franchise and good will held and owned in different proportions by individuals. The franchise is owned by the company, but forms no part or element of its capital stock, while the same franchise does enter into the value of the share stock. This decision illuminates the meaning of section 12 of the Tax Law (*supra*). It is the value of the capital stock, not the value of the share stock, which the assessors are to ascertain.

The value of the capital stock, that is, its money and capital, in other words, its gross assets, as appeared by the statement before the commissioners, was $22,037,486. Absolutely nothing appears to impeach this statement made and verified by the assistant treasurer.

The commissioners state that because $15,000,000 of bonds had been issued, no part of which had been used in the purchase of non-taxable property, they inferred that the amount had been applied to the property of the relator in addition to the paid-up capital, and that the assets of the company were increased by that sum. But this inference has no sound basis as against the treasurer's statement of the actual value of the assets. Such a presumption was expressly disapproved in *People ex rel. Manhattan R. Co.* v. *Barker* (146 N. Y. 304, 313).

It does not appear, as stated in the return, that the share stock "had a market value far in excess of the nominal or par value of such stock," and under the *Union Trust Co. Case* (*supra*), it would make no difference if it had appeared. It only appears that the stock of the company was not worth less than par. As the commis-

sioners did nct exercise their prerogative and require an examination of officers and books, they were bound to assume that the value of the gross assets was correctly given in the statement filed with the commissioners.

In the recent case of *People ex rel. Consolidated Gas Co.* v. *Feitner* (78 App. Div. 313) the Appellate Division in the first department held that the commissioners were bound under section 12 of the Tax Law to assess the capital and surplus at its full value; that if there was nothing to contradict the statement filed with them by the relator and the testimony of its president, the commissioners were bound to accept such statement and testimony as true and determine whether or not the relator had assessable property. But because the record did not disclose the evidence upon which the commissioners acted, but only their conclusions, and as the court could not determine whether the conclusion was fairly drawn, it remitted the matter to them for further consideration. But in the present case we have all the evidence upon which the commissioners acted, and there is no reason why we should remit the matter to the commissioners.

It is unnecessary to consider the valuation of the service pipes, for if the amount is added to the amount of the gross assets, there still is an excess of deductions over the amount of the gross assets.

For these reasons the order of the Special Term should be reversed and the assessment canceled, with costs.

WOODWARD, J., concurred; BARTLETT and HIRSCHBERG, JJ., concurred in result; HOOKER, J., taking no part.

Order reversed, with ten dollars costs and disbursements, and judgment directed canceling the assessment.