THE PEOPLE ex rel. THE MANHATTAN RAILWAY COMPANY, Appellant and Respondent, *v.* EDWARD P. BARKER et al., Commissioners, etc., Appellants and Respondents.

Under the provision of the act of 1857, in relation to the assessment of taxes on corporations liable to taxation (Chap. 456, Laws of '1857), which prescribes the method of assessing the capital stock of such a corporation, the actual value of its capital stock, not the market value of its share stock, is to be considered ; that is, the assessment is to be limited to the tangible personal property and may not include the franchises of the corporation.

Under the provisions of the Revised Statutes in reference to the assessment for taxation of real property (1 R. S. 393, § 17), which requires the assessors to assess the same at its "just and full value as they would appraise the same in payment of a just debt due from a solvent debtor," and also under the provision of the New York Consolidation Act (§ 814, chap. 410, Laws of 1882), which requires the assessment to be "at the sum for which such property under ordinary circumstances would sell," it is the duty of the assessors to assess the property at its actual value.

As the commissioners of taxes and assessments in the city of New York are sworn officers, in the absence of evidence to the contrary, it is to be presumed that they have performed their duty in making such an assessment.

It is not to be presumed that the indebtedness of a corporation represents property to the amount of such indebtedness in addition to that represented by its capital stock.

In making an assessment under said act of 1857 the earnings of the corporation may be considered by the assessors.

Where, therefore, it appeared that the earnings of the corporation enabled it to pay its running expenses, necessary repairs and interest on its indebtedness, and to declare a dividend of six per cent and still have a surplus, *held*, it was proper to assume that its capital stock remains unimpaired, and that there are surplus assets sufficient to pay its outstanding indebtedness.

In assessing personal property assessors are entitled to exercise more latitude than is permitted in assessing real property.

The admissions of parties, oral or written, not given in evidence on the trial, may not be received by an appellate court for the purpose of reversing the findings of the trial court.

(Argued May 20, 1895; decided June 11, 1895.)

CROSS-APPEALS from order of the General Term of the Supreme Court in the first judicial department, made April

11, 1895, which reversed an order of Special Term vacating and setting aside an assessment of the relator's capital stock for taxation as personal property for the year 1894, and affirmed the proceedings of the commissioners of taxes and assessments.

The facts, so far as material, are stated in the opinion.

*Julien T. Davies, John F. Dillon* and *Herbert Barry* for relator, appellant and respondent. The relator furnished to the commissioners all the evidence required by the statute, and all required by the commissioners themselves. (1 R. S. [8th ed.] 414, § 2.) The commissioners are not free capriciously to disregard any part of the evidence. They must base their assessments upon evidence, not mere presumptions. (*People ex rel.* v. *Coleman,* 126 N. Y. 433; *People ex rel.* v. *Barker,* 139 id. 55; *People ex rel.* v. *Barker,* 141 id. 251; *People ex rel.* v. *Dykes,* 45 N. Y. St. Repr. 621; *People ex rel.* v. *Barker,* 144 N. Y. 94.) The contention of the commissioners is, in brief, as follows : The relator acquiesced in an assessment in 1893; therefore, it admitted that the assessment was just. But if it admitted that the assessment was just, then it admitted that it then had taxable personal assets equal to the amount of the assessment. And it follows that in 1894 the relator had $5,000,000 more assessable personal property than in 1893. And if the relator submitted in 1893, then it is estopped from ever after asserting its rights. This is untenable. (*Slingerland* v. *Norton,* 58 Hun, 578; *White* v. *O. D. S. S. Co.,* 102 N. Y. 660; *Smith* v. *Satterlee,* 130 id. 677; *Tennant* v. *Dudley,* 144 id. 504; *Allen* v. *McKeen,* 1 Sumn. 276.) The statement of surplus earnings in the report of the company to the commissioners was consistent with the relator's other statements; it did not justify the commissioners in disregarding those other statements. (*People ex rel.* v. *Barker,* 144 N. Y. 638.) The duty of the commissioners was to interrogate the relator, to obtain all evidence required, and they are bound by the evidence actually given. (*People ex rel.* v. *Barker,* 141 N. Y. 251; 139 id. 55.) The relator is not liable to taxation for local purposes upon its franchises, and no assessment should be based upon the value of those

franchises. ˙(*M. S. Bank* v. *City of Rochester*, 37 N. Y. 365 ;
*People ex rel.* v. *Coleman*, 126 id. 433 ; *People* v. *H. Ins.
Co.*, 92 id. 329 ; *C. T. Co.* v. *N. Y. C. & N. R. R. Co.*, 110
id. 250, 254 ; *Bank of Commerce* v. *City of New York*, 2
Black, 620 ; *People* v. *H. Ins. Co.*, 134 U. S. 594, 599 ;
Laws of 1857, chap. 456 ; Laws of 1886, chap. 761, § 7 ; Laws of
1867, chap. 861 ; Laws of 1880, chap. 542 ; Laws of 1881, chap.
361, §§ 3, 6 ; Laws of 1882, chap. 409, § 321 ; Laws of 1886,
chap. 679 ; Laws of 1887, chap. 479 ; *M. S. Bank* v. *City of
Rochester*, 37 N.Y. 365 ; *H. Ins. Co.* v. *State*, 134 U. S. 504 ; *C.
T. Co.* v. *N. Y. C. & N. R. R. Co.*, 110 N. Y. 250.) The com-
missioners erred in disregarding the debts of the relator.
(*People ex rel.* v. *Barker*, 72 Hun, 126 ; 141 N. Y. 196 ;
*People ex rel.* v. *Barker*, 139 id. 55 ; *People ex rel.* v. *Bar-
ker*, 76 Hun, 454.) The provision in the order relating to pay-
ment of tax without penalty or interest is equitable and
just and within the power of the court. (Code Civ. Pro.
§ 1323 ; *People ex rel.* v. *Livingston*, 80 N. Y. 96 ; *Wallace*
v. *Berdell*, 105 id. 7 ; *P. N. Bank* v. *Bayne*, 140 id. 321 ;
*Haebler* v. *Myers*, 132 id. 363 ; *Chamberlain* v. *Choles*, 35 id.
477 ; *McGuckin* v. *Coulter*, 1 J. & S. 328 ; Laws of 1882,
chap. 410, §§ 821, 822, 861.) The interest in this case being a
penalty, the statute imposing it should be strictly construed.
(*Cutler* v. *Mayor, etc.*, 92 N. Y. 166.)

*David J. Dean* for respondents. The mode of assessment
pointed out by the statute has been strictly followed by the
commissioners, and no error in their proceedings is shown by
the return. (1 R. S. [8th ed.] chap. 13, tit. 4 ; *People ex rel.*
v. *Comrs. of Taxes*, 95 N. Y. 561 ; *People ex rel.* v. *Cole-
man*, 126 id. 433 ; Laws of 1882, chap. 410, § 814 ; *People
ex rel.* v. *Barker*, 144 N. Y. 94 ; 66 Hun, 27.) The commis-
sioners of taxes had power to go beyond the statement, and,
upon their own judgment or knowledge, determine the value
of the relator's assets at a figure in excess of the amount
stated by the relator. (*M. F. Ins. Co.* v. *Comrs. of Taxes*,
76 N. Y. 64 ; *People ex rel.* v. *Barker*, 48 id. 77 ; *People*

1895.]     People ex rel. M. R. Co. *v.* Barker et al.     307

N. Y. Rep.]     Opinion of the Court, per Haight, J.

*ex rel.* v. *Davenport,* 91 id. 574; *People.* v. *Asten,* 100 id. 597; *People ex rel.* v. *Barker,* 144 N. Y. 94.) Surplus is composed of assets, realized from profits remaining undivided and subject to division at the option of the directors, and being additional to the assets which constitute the unimpaired capital. (*U. T. Co.* v. *Coleman,* 126 N. Y. 437.) The commissioners of taxes have not contravened anything decided in the cases of *People ex rel.* v. *Barker* (139 N. Y. 55); *People ex rel.* v. *Barker* (141 id. 196); *People ex rel.* v. *Barker* (Id. 251); *People ex rel.* v. *Coleman* (126 id. 433); *People ex rel.* v. *Barker* (95 id. 561). The deduction of the assessed value of the realty from the value of the assets of the company in excess of its debts is the deduction which the statute requires to be made in fixing the assessment for capital. (*People ex rel.* v. *Asten,* 100 N. Y. 601.) It is the intention of the statute that all the property of the corporation shall be assessed to its aggregate actual value, and that so much thereof as would otherwise escape taxation, by reason of undervaluation of realty, shall be assessed as capital under head of personalty. (*People ex rel.* v. *Tax Comrs.,* 95 N. Y. 556; *People ex rel.* v. *Comrs. of Taxes,* 104 id. 249; *People ex rel.* v. *Barker,* 144 id. 94.) The result arrived at in the case at bar is clearly just and should be sustained. *P. R. R. Co. Case,* 104 N. Y. 249; *People ex rel.* v. *Barker,* 144 id. 94.)

Haight, J. On the 8th day of January, 1894, the commissioners of taxes and assessments of the city of New York assessed the relator, the Manhattan Railway Company, for its personal property at the sum of $30,000,000. In the month of April thereafter the relator filed a statement upon one of the blank forms furnished by the department of taxes and assessments showing its condition on the second Monday of January, 1894. An examination of the treasurer of the company was thereupon had by the commissioners, who then reduced the assessment and fixed it at the sum of $17,860,712. The relator thereupon procured a writ of certiorari directed to the tax commissioners, commanding them to make return

~308     People ex rel. M. R. Co. *v.* Barker et al.     [June,

Opinion of the Court, per Haight, J.          [Vol. 146.

of the proceedings had before them to the Special Term of the Supreme Court in order that a review might be had before that court. Upon the returns so made by the commissioners a hearing was had by the court in November, 1894, upon which an order was entered vacating the assessment. Upon an appeal to the General Term this order was reversed and the assessment as made reinstated. The statement furnished by the relator to the commissioners of taxes and assessments is substantially as follows :

| | |
|---|---:|
| Total gross assets.... ...................... | $11,071,315 |
| Capital stock actually paid in or secured to be paid in................................... | 29,925,200 |
| Amount of surplus earnings.................. | 5,326,432 |

Rate of dividend for last year or last annual dividend, 6%.
Indebtedness in detail as follows :

| | |
|---|---:|
| Mortgage bonds outstanding, Manhattan Railway Co.................................. | $11,663,035 |
| Mortgage bonds outstanding, N. Y. El. R. R. Co.................................... | 8,500,000 |
| Debenture bonds outstanding N. Y. El. R. R. Co .................................... | $1,000,000 |
| Total ................................. | $21,163,035 |

| | |
|---|---:|
| Assessed value of real estate, N. Y. Co. structure ................................ | $4,128,000 |
| Structure, formerly Suburban structure....... | 1,101,700 |
| In fee, as per statement..................... | 1,946,000 |
| Leasehold, as per statement.................. | 62,000 |
| In fee, Suburban ........................... | 85,500 |
| Total ................................. | $7,323,200 |

| | |
|---|---:|
| Rolling stock............................... | $1,983,739 |
| Supplies, tools, &c. ........................ | 381,538 |
| Cash........................................ | 1,382,838 |
| Total ................................. | $3,748,115 |

| | |
|---|---:|
| Amount invested in the capital stock of the Metropolitan Elevated Railroad Co. which is taxed upon its capital...................... | $7,075,200 |
| Amount invested in U. S. securities, 10% of capital ($29,925,200)..................... | 2,992,520 |

It also appears from the statement that the mortgage and debenture bonds of the N. Y. El. R. R. Co. are direct obligations of the Manhattan Company by reason of the merger of the N. Y. El. R. R. Co. into the Manhattan Co., and that no portion of the indebtedness mentioned was incurred in the purchase of non-taxable property or securities for the purpose of evading taxation. In the testimony given by the treasurer of the Manhattan Co. before the commissioners it is stated that " The present authorized capital stock of the Manhattan Railroad Company is $30,000,000, and that $29,925,200 has been issued ; of that amount $7,800,000 has been issued to the shareholders of the New York Co. merging that company with the Manhattan. At present and since the second Monday of January, 1894, the merger of the Metropolitan Company has been completed and $7,150,000 of the capital of $30,000,000 has been issued to the Metropolitan Company. When this return was made a few shares of the Metropolitan were outstanding not exchanged, and for that reason the return was made somewhat short of $30,000,000 as the actual capital stock. The capital stock of the Manhattan Co. to the extent of $4,000,000 has been issued to take in the Suburban Co. and was used in connection with the merger of that company. The original capital stock of the Manhattan was $13,000,000. When this capital was increased to $30,000,000 for the purpose of completing the merger of the New York and Metropolitan Companies with the Manhattan the agreement of the merger provided that capital stock of the Manhattan should be issued to the holders of this $13,000,000 of stock at 85% or that capital stock in par value of $11,050,000 has been issued to the old stockholders of the Manhattan Co. who held the original

$13,000,000. That $13,000,000 was originally issued in connection with the leasing to the Manhattan of the N. Y. and Metropolitan Companies and the stockholders of those two companies respectively received $6,500,000 of the capital stock of the Manhattan Co. as the consideration for the making of these leases." It further appears from his testimony that the $5,326,432 entered in the statement as the amount of surplus earnings was the amount of the earnings of the company over and above the dividends. That such surplus appeared upon the books of the company, but was not in fact now existing for the reason that it had been expended and was now represented by the real and personal property included in the statement, with the exception of the $1,382,838 cash on hand. The commissioners in their return state that the method by which they made their assessment was as follows : "At the time that we fixed the assessment against the relator at the sum of $17,860,712 we had before us and considered the statement filed with us by the abovenamed relator upon its application for a reduction and cancellation of an assessment against it for the year 1893, and we were further advised and informed by the records in our office touching the proceedings had upon the application by this relator for a reduction and cancellation of an assessment against it for the year 1893 that the relator had then admitted its liability to and assented to an assessment against its personal property in the sum of $12,529,915, and having compared the statement of the relator filed in 1893 with the statement filed by the relator upon its application for a reduction and cancellation of the assessment against it for the year 1894, we concluded that the assessment against it for the year 1894 in the sum of $17,860,712 would be in all respects just and fair ; that accordingly we fixed the assessment for the year 1894 at that figure."

In 1893 some controversy arose over the amount of the assessment of the relator's personal property, which resulted in Mr. Davies, the attorney for the relator, addressing a letter to the commissioners, in which he states that Mr. Gould had

authorized him to say that if the assessment did not exceed $12,500,000 they would acquiesce. The statement made in 1892 has some slight variations from that made in 1894, but is substantially the same with the exception that the amount of surplus reported in 1894 is nearly $1,000,000 in excess of that of 1893, so that if the commissioners in fixing the amount of the assessment for 1894 acted upon the statement made in 1893 as compared with that made in 1894, and the letter addressed to them by Mr. Davies, they could not well have increased the assessment in 1894 more than $1,000,000 or thereabouts, the amount of the increase of the surplus earnings of the company. This would have made in round numbers $13,500,000. It was, however, stated upon the argument by their counsel that a very different method was adopted in reaching the amount of the assessment; that in the statement furnished to the commissioners the *assessed value* of the real estate had been given at $7,323,200, and no mention had been made as to its actual value, and that the commissioners were, therefore, left to judge for themselves as to the actual value, and that that was arrived at in the following manner:

| | |
|---|---:|
| Capital stock | $29,925,200 |
| Bonded indebtedness | 21,163,035 |
| Surplus | 5,326,432 |
| Gross assets | $56,414,667 |

Deductions:

| | | |
|---|---:|---:|
| Assessed value of real estate | $7,323,200 | |
| Stock in other companies | 7,075,200 | |
| Mortgage indebtedness | 21,163,035 | |
| 10% of the capital stock | 2,992,520 | |
| Total | $38,553,955 | 38,553,955 |

which, deducted from gross assets, leaves amount assessable ............................... $17,860,712
The actual value of the real estate as assessed is thus ascertained from the relator's statement by deducting from the gross assets .......... $56,414,667

The amount of its personal property,
consisting of rolling stock, cash,
tools, etc....................... $3,748,315
Stock in other companies........... 7,075,200
                                    ——————— $10,823,315

leaving as the actual value of the real estate.... $45,591,352

We cannot adopt or approve of this method of ascertaining the value of the relator's personal property or of the actual value of its real estate. The method is erroneous and incorrect for various reasons. Under the statute the capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll or shall have been exempted by law, together with its surplus profits or reserve funds exceeding ten per cent of its capital after deducting the assessed value of its real estate and of shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its *actual value* and taxed in the same manner as other personal and real estate of the county. (Laws of 1857, chap. 456, § 3.) It is the actual value of its capital stock and not the market value of its share stock that is to be assessed; in other words, it is its actual tangible personal property and not its franchises. Other statutes provide for the taxing of its real estate and franchises. (*People ex rel. The Union Trust Co.* v. *Coleman*, 126 N. Y. 433.) The real property of the relator is located in the city of New York under the eye and subject to the inspection of the commissioners. Under the Revised Statutes they are required to assess it at its just and full value as they would appraise the same in payment of a just debt due from a solvent debtor. (1 R. S. 393, § 17.) And under the Consolidation Act for the city of New York it shall be assessed "at the sum for which such property under ordinary circumstances would sell." The value of property is determined by what it can be bought and sold for, and there can be no doubt but that these various expressions used in the statutes all are intended to mean the

*actual value* of the property.  The commissioners are sworn officers, and as such, in absence of evidence to the contrary, are presumed to have done their duty.  They have assessed the real estate at $7,323,200, and yet, under the method presented by their counsel for ascertaining the value of the relator's personal property, they now estimate the actual value of the real estate to be $45,591,352.  We are aware that it is generally understood that in many localities throughout the state assessors, in violation of their duties, assess the real estate in their localities at a sum less than its actual value, but in the absence of evidence that this has been done by the commissioners of taxes and assessments in the city of New York, we cannot assume that they have so transgressed for the purpose of approving of their work in this case.  Real property cannot well be covered up or hid from view.  Its value can readily be ascertained.  It should be assessed upon estimates directly made as to its value and not upon presumptions figured upon intricate theories.

Again, the method presented by respondents' counsel involves the presumption that the indebtedness of the corporation represents property to the amount of such indebtedness in addition to that represented by its capital stock.  This presumption cannot be indulged.  The indebtedness may have been incurred for operating expenses, wages of employees and material used up.  It may represent property worn out, decayed or burned up during the existence of the corporation.  Presumptions that arise from the earnings of a corporation and those that arise from its indebtedness are quite different.  Too many of the railroads of the country are in the hands of receivers to warrant a judicial presumption that the bonded or other indebtedness of each road represents its actual tangible property in addition to that represented by its capital stock.

And again, the method proposed necessarily includes the value of the franchises possessed by the corporation which, as we have seen, cannot properly be included in the assessment under review.

Whilst the assessment made cannot be sustained, we think

that the relator ought not to escape a proper assessment for its property. It is true that the commissioners are not free to capriciously disregard the evidence and emancipate themselves from all restrictions and rules, however fundamental ; they are not bound by statements that are contradicted and which they disbelieve, where good reasons exist for such disbelief. (*The People ex rel. Union Trust Co.* v. *Coleman, supra ; The People ex rel. Edison El. Co.* v. *Barker,* 139 N. Y. 55–67 ; *The People ex rel. Gen. El. Co.* v. *Barker,* 141 id. 251 ; *The People ex rel. Manh. F. Ins. Co.* v. *The Comrs. of Taxes,* 76 id. 64; *People ex rel. Westchester F. Ins. Co.* v. *Davenport,* 91 id. 574.) The letter of Mr. Davies in 1893 to the effect that if the assessment was made at $12,500,000 the company would acquiesce, having been written for the purpose of a settlement, and an adjustment of the controversy then existing, could not properly be adopted by the commissioners as the basis of an assessment for subsequent years. Still, at the same time, it might well create a suspicion as to the truthfulness of a statement made the year following, showing that so far as the property of the corporation was concerned, aside from its franchises, it was insolvent to the extent of $3,000,000. Aside from this, there exists the fact that the net earnings of the corporation for the year were such as to enable it to pay the interest upon its indebtedness and a dividend upon its thirty millions of capital stock of six per cent and still have a surplus bordering upon a million dollars. These facts fully justified the commissioners in discrediting the statement made to them by the relator. Personal property, unlike real property, may not always be readily found and assessments thereof by assessors are often attended with many difficulties. For these reasons more latitude necessarily should be given assessors in ascertaining and determining the amount and value of personal property than should be permitted in assessing real property. Presumptions to some extent should be indulged. For this reason the earnings of a corporation may be considered by the assessors, and where they are such as to enable the company to pay its running expenses, necessary repairs, interest upon its indebtedness and

declare a dividend of six per cent and still have a surplus, it may be assumed that its capital stock remains unimpaired and that there are assets over and above sufficient to pay its outstanding indebtedness. (*People ex rel. The Equitable Gas Light Co.* v. *Barker*, 144 N. Y. 94.) This method, however, may include the value of the franchises, which should be deducted in order to determine the amount of property liable for assessment. Such value has not been given, and we are consequently left without the evidence at hand upon which to determine the actual value of the personal property under the presumptions arising from the facts mentioned. It may turn out that the capital stock represents property to the amount thereof in addition to the franchises; that the stock issued to the stockholders of the New York, Metropolitan and Suburban companies represented money actually paid by the stockholders of those companies for real estate and the building, construction and equipments of the elevated railroads thereon. Should such be the case, the presumption from the earnings of the company would be permissible, that the capital stock remained unimpaired, representing property over and above the franchises, to the amount thereof, and in addition, sufficient to pay the outstanding indebtedness. Upon this basis the assessable personal property could be determined by adding to the capital stock issued the surplus still on hand not invested in the real and personal property of the company and deducting therefrom the assessable value of the real estate, the stock in other companies and the ten per cent allowed by statute. The result would be as follows:

| | | |
|---|---|---|
| Capital stock.............................. | | $29, 925, 200 |
| Surplus on hand in cash................... | | 1, 382, 838 |
| Total ................................ | | $31, 308, 038 |
| Real estate................... | $7, 323, 200 | |
| Stock in other companies...... | 7, 075, 200 | |
| 10% of capital............ .... | 2, 992, 520 | |
| | | 17, 390, 920 |
| Amount assessable.................... | | $13, 917, 118 |

Upon the argument the respondents' counsel offered to read in evidence the report of the officers of the Manhattan Co. to the railroad commission in 1894. This report would doubtless be competent evidence for the commissioners or the Special Term to receive and act upon. It might be treated as admissions made by the relator. The General Terms sometimes receive record evidence in aid of judgments under review, but we are aware of no case in which admissions of parties, either oral or written, have been received by a court on review for the purpose of reversing the findings of the trial court. Such practice would manifestly be unjust. It would deprive the party making the statement of all opportunity to explain, modify or correct the statement. We consequently are of the opinion that we ought not at this time to consider the report or to treat it as properly before us.

The General Term was of the opinion that this assessment could be sustained upon the authority of *The People ex rel. The Equitable Gas Light Co.* v. *Barker* (144 N. Y. 94). The difficulty is that in that case the value of the patents and franchises was found to be $500,000, whilst in this case we have no value given of the franchises or facts appearing from which such value can be determined.

The statute provides that upon the return of a writ of certiorari to review an assessment the court shall have power to order the assessment, if illegal, to be stricken from the roll, or, if erroneous or unequal, to order a re-assessment of the property, etc. (Laws of 1880, ch. 269, § 4.) The assessment in this case is not illegal; it is merely erroneous. A re-assessment should, therefore, be ordered.

The order of the General Term should be reversed and that of the Special Term modified so as to vacate the assessment made and order a re-assessment by the commissioners, without costs of this appeal to either party.

All concur, except O'Brien, J., not voting.

Ordered accordingly.