TAXATION—RAILROADS—REALTY—VALUATION—LAND DAMAGES.
  In fixing the valuation of real estate of a railroad company within a town for purposes of taxation, the damages the company would .be compelled to pay for depreciation of land adjoining that taken, if it were now constructing its road, cannot be included.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company, against Michael A. Hilts and others, as assessors of the town of Sullivan, to review the assessment of relator's property in said town for the· year 1897. The issues were referred, and a motion made to correct the referee's report. Modified and confirmed.

Harris & Harris, for relator.
C. A. Hitchcock, for defendants.

HISCOCK, J. The main line of the relator's road passes through the town of Sullivan, the right of way being about 5.64 miles in length by from 120 to 160 feet wide, the area of the right of way proper being between 104 and 105 acres. The land at stations outside of the right of way is about 20 acres, and in addition to this the relator owned a farm of 16 or 17 acres. There are four main tracks, with a total mileage, upon the basis of a single track, of 22.56 miles, and in addition between 1 and 2 miles of side track. This section of the road passes through no incorporated or large village. Defendants fixed the value of relator's property for the year 1897, for ·purposes of assessment in said town, at $500,000; and the company, feeling aggrieved, sued out this writ, to which

defendants made return, raising issues which were sent to a referee, with power to take proof and report his findings and conclusions. Said referee, by his report, finds that the full value of the property of the said relator in said town, as assessed on said roll for 1897, was as follows: Total value, excluding right of way, land damages, and land outside of right of way, $287,091.98. Full value of right of way and land outside of right of way, exclusive of land damages, property, and structures, included in the first item, $14,432. And then said referee finds as follows:

"That on July 1, 1897, if the relator had been about to lay out and construct its road anew, to procure its right of way through said town, it would have been obliged to pay, in addition to the value of the land as land, $57,475 for land damages. That the full value of said company's property in said town on July 1, 1897, including $57,475 for land damages, was $358,998.98."

And he then finds, as conclusion of law, that the above amount of $358,998.98, which includes said item of $57,475 for land damages, is the amount and valuation upon and for which said relator should have been assessed at the time in question. Upon this motion to correct and determine the amount of the aforesaid assessment of relator's property based upon the referee's report, both sides complain of his report and conclusions, but naturally in different respects. The defendants insist that the referee's valuation of the relator's lands, structures, etc., is altogether too low. A large amount of evidence was taken upon this subject, both sides producing and swearing all the witnesses they deemed desirable. The evidence and opinions of these witnesses varied very largely. The referee had the advantage of seeing and hearing them, and, the evidence taken being amply sufficient to sustain his findings and conclusions in the respect named, I am not disposed to overrule his judgment.

The relator objects to the report of the referee in that it includes in the valuation of relator's property, as an item, and an amount upon which it should be assessed, the sum of $54,475, which it would be compelled to pay, if now constructing its road, for land damages. It is insisted that such sum is not an item of valuation, or property upon which an assessment should be laid. This question is very distinctly and decisively presented by the report in question, for the referee finds, in terms, what was the full value of relator's property upon July 1, 1897, outside of this item of $54,-475, and that this amount is what the relator "would have been obliged to pay, in addition to the value of the land as land, * * * for land damages." And this term "land damages," in this connection and report, is understood to mean those damages which relator would have been compelled to pay for depreciation to land adjoining that actually taken by it by reason of such taking for railroad purposes. In the opinion and judgment of the referee, lands lying along the line of relator's road, not actually taken and used by it, would have been depreciated and damaged in this sum of $54,475 by reason of taking for railroad purposes the land actually occupied by the relator. The defendants insist, and the referee has found, that this item should be added to the

actual value of the property, including right of way taken and now being enjoyed by relator, and that it should be assessed upon such item. The relator opposes, and, as it seems to me, correctly, this contention and view. The defendants' duty extended and was limited to assessing relator's real estate situate in the town whereof they were assessors. In making such assessment they had nothing to do with, and could not take into account, its franchise, and the various items of property values which might be covered thereby. It was their duty to assess this real estate at its just and full value. Various expressions have been used in different statutes upon this subject of the assessment of real estate. Under the Revised Statutes, assessors are required to assess such real estate "at its just and true value as they would appraise the same in payment of a just debt due from a solvent debtor." Under the act governing assessments in the city of New York, it was the duty to assess "at the sum for which such property under ordinary circumstances would sell." The value of property is determined by what it can be bought and sold for, and these various expressions used in different statutes indicate an intention upon the part of the legislature that the assessments should be at the actual value of the property. People v. Barker, 146 N. Y. 312, 40 N. E. 996. There has been considerable discussion and controversy as to the manner in which these principles should be applied and worked out in the assessment of property such as is involved here. Probably the most concise, specific, and comprehensive rule enunciated in recent decisions is that laid down in People v. Clapp, 152 N. Y. 490, 46 N. E. 842, where the court decided that under ordinary circumstances the outside limit of assessment would be the sum for which the railroad property being assessed could be reproduced; that, while sometimes there would be such depreciation of the property or other cause as would call for a lower assessment than this, it would be difficult to conceive of any case calling for assessment at a larger sum. The court says upon this subject:

"The assessors are not bound by the estimate of the cost of reproduction given by the railroad or its agents. They may inquire into the question themselves, and in their own way. * * * In the end, when they come to make their decision as to value for the purpose of taxation, it may properly be much less, but can never exceed the actual cost of producing the property in the condition in which it is found by the assessors at the time of making the assessment. Such a rule of valuation is reasonable and possible." Page 494, 152 N. Y., and page 843, 46 N. E.

And again (page 495, 152 N. Y., and page 844, 46 N. E.):

"When there is no question before the assessors save the value of that part of the real estate of a railroad which is within the town, the cost of replacing it will ordinarily furnish a just measure of valuation."

The opposing sides to this proceeding both claim that the rule thus laid down supports its contention upon this question of including as an element of value the so-called land damages. The defendants especially refer to that sentence, found in the opinion in question, where the court says (page 494, 152 N. Y., and page 843, 46 N. E.), "When valued at what it would cost to procure the land, construct the roadbed, put down the ties and rails, and erect the buildings and

other structures, all new, it is difficult to see any ground for assessing it at a larger sum," as supporting their theory; that is, they claim that, when the court speaks of fixing the value of railroad property for assessment purposes in part by what it would cost "to procure the land," it has in mind and includes as an item of assessable property what would be paid for damages to adjoining property. I am inclined to think, however, that the fair meaning and interpretation of the opinion in this respect are that the assessors may take into account what the company would have to pay in procuring the land actually taken and used and occupied by the railroad, and that it is not intended to include the accidental and varying sums which might be paid for the depreciation and destruction of other property not procured or used or operated by the railroad. The value of relator's real estate, under the principles which govern the defendants' assessment of it, was not increased by the payment of these land damages. Those damages did not represent any property which had been acquired by the railroad company. They simply represented property values which had been destroyed. They did not represent any property which the relator had acquired and was in possession of, but they stood in the place of property which had been destroyed by the construction of the road. They did not represent something which was in actual existence, for which an assessment might be properly laid, but they represented values which had been destroyed, and which had ceased to exist. It seems to me that it would be, many times, an unsafe measure of values for any purpose, and at times a harsh measure of values for purposes of taxation, to add to the value of property which had been actually acquired the value of that which had been destroyed. Assume that, in the construction of a railroad across a mere corner of the town represented by defendants, it had become necessary to so lay it with reference to a building worth any large sum (say, $200,000) as to completely destroy its value, although not standing upon the land actually taken by the railroad and used for its purposes. The land actually procured and used by the railroad might be worth, say, $10,000. There has been a total destruction in value of the building, and the company is compelled to pay as damages substantially its entire value. The sum so paid represents the absolute destruction of property which is lost to the original owner, and is not acquired by the railroad. The latter receives no benefit from it. Its real estate, its roadbed, and its right of way are not made in the slightest degree more valuable because this property has been destroyed and it has been compelled to pay for it. I do not see any logical or equitable reason why, therefore, the assessment of such real estate should be increased by this item; why there should be added, for the purposes of taxation, to the value of the property really existing and taken by the railroad, the value of other property not taken by it, but which had been destroyed or depreciated to the extent of practical destruction. This would amount, so far as these proceedings are concerned, to taxation upon property which had been destroyed. If defendants had any right to take into account the value of relator's franchise, in making the assessment in question, there might be some

additional arguments in favor of including the item in question. It might be argued that the payment of such item was necessary to the enjoyment of its franchise, and that the enjoyment of its franchise was made possible and more valuable because of such payment. But, of course, that question is not here. The defendants, in making the assessment in question, had no right to take into account the rights of relator's franchise, or other property rights outside of its real estate. I have been referred to no decision directly adjudicating this question, beyond the special term, where, in the case of People ex rel. New York Cent. & H. R. R. Co. v. Boyer, a conclusion seems to have been reached opposite to the one above set forth. Upon the other hand, in the case of People v. Barker, 152 N. Y. 417, 454, 46 N. E. 875, it is very strongly intimated by Judge O'Brien that an item such as that in question here should not be included in the assessment valuation of a railroad's property.

In accordance with these views, the report of the referee is confirmed, except as to the item of $57,475, by which amount relator's assessment should be reduced. Ordered accordingly.