(96 Misc. Rep. 10)

PEOPLE ex rel. BROOKLYN DEVELOPMENT CO. v. PURDY et al., Commissioners of Taxes and Assessments.

PEOPLE ex rel. HARWOOD REAL ESTATE ASS'N OF NEW YORK v., SAME.

(Supreme Court, Special Term, Kings County. June 23, 1916.)

1. TAXATION ☞493(1)—TAXES—ASSESSMENT—CERTIORARI TO REVIEW—PROCEDURE.

The procedure under New York City Charter (Laws 1901, c. 466) § 906, allowing certiorari to the Supreme Court to review or correct on the merits any final determination of the board of taxes and assessments, is regulated by Tax Law (Consol. Laws, c. 60) §§ 290–307, as to procedure upon certiorari in tax proceedings.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 876; Dec. Dig. ☞493(1).]

2. TAXATION ☞493(1)—ASSESSMENT—CERTIORARI TO REVIEW.

Such proceeding is a special one, not a common-law certiorari, and not under the strict rules of common law, either in the admission of evidence or otherwise.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 876; Dec. Dig. ☞493(1).]

3. TAXATION ☞493(7)—ASSESSMENT—CERTIORARI TO REVIEW—EVIDENCE—BURDEN OF PROOF.

The burden of proof of the inequality or excessiveness of the assessment is upon relator.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 881; Dec. Dig. ☞493(7).]

4. TAXATION ☞319(2)—ASSESSORS—PROCEEDINGS.

In the absence of evidence to the contrary, assessors are presumed to have properly performed their duties in making an assessment.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. ☞319(2); Evidence, Cent. Dig. § 105.]

5. TAXATION ☞493(7)—ASSESSMENT—CERTIORARI TO REVIEW—HEARING.

Certiorari to review an assessment under New York City Charter, § 906, allowing certiorari to the Supreme Court to review or correct on the merits any final determination of the board of taxes and assessments, and Tax Law, §§ 290–307, as to procedure upon certiorari in tax proceedings, is in effect a new hearing.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 881; Dec. Dig. ☞493(7).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TAXATION ☞493(6)—ASSESSMENT—CERTIORARI TO REVIEW—WRIT AND RE-
TURN.

    In such proceedings the return is not conclusive upon the questions of
fact stated therein, but it and the petition are regarded simply as plead-
ings.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 880; Dec. Dig.
☞493(6).]

7. TAXATION ☞493(9)—ASSESSMENT—CERTIORARI TO REVIEW—EVIDENCE.

    In such proceeding, increases in assessment of a number of lots in a
tract, ranging from 7 to over 20 per cent., based on improved transpor-
tation facilities and expiration of restrictive covenants, where there
was no evidence of corresponding increase in market value, as shown by
transfers, were excessive.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 883; Dec. Dig.
☞493(9).]

Certiorari by the People, on the relation of the Brooklyn Develop-
ment Company, and by the People on the relation of the Harwood Real
Estate Association of New York, against Lawson Purdy and others,
as the Commissioners of Taxes and Assessments. Final order sustain-
ing writ in each case.

Dunlop & Smith, of New York City (James N. Dunlop, of New
York City, of counsel), for relators.

Lamar Hardy, Corp. Counsel, of New York City, and Charles J.
Druhan, Asst. Corp. Counsel, of Brooklyn, for respondents.

BENEDICT, J. These two proceedings are brought to review by
certiorari assessments for the tax of the year 1915 on a large number
of lots in the tract of land known as Marlboro, in the borough of
Brooklyn, city of New York. The lots in question are comprised in
119 tax lots, of which 67 were owned by the Brooklyn Development
Company and the remaining 52 by the Harwood Real Estate Associa-
tion upon the 1st day of October, 1914. The tract of land in question
is irregular in shape, but is bounded generally by Twenty-Second ave-
nue on the northwest, Sixtieth street on the northeast, Gravesend
avenue on the east, and Kings Highway on the south. It contains
more than 1,000 city lots, mostly unimproved; there being only from
17 to 20 buildings on the property. The tract was conveyed to the
relators by various conveyances, the earliest of which was dated May
1, 1899. The relators are subsidiary corporations of Wood, Harmon
& Co., who in 1902 caused the tract to be platted in lots and blocks,
and made and filed a map showing the streets and lots in the tract,
installed street improvements, consisting of macadam roadways and
cement sidewalks and curbs, and set out trees along the streets. Wood,
Harmon & Co. sold a considerable portion of the tract to a large num-
ber of persons, most of whom were not residents of this state, and
who purchased in small parcels, consisting of 1, 2, or 3 lots. The
sales were almost entirely made upon contracts extending over a period
of from 8 to 12 years, with small cash payments down, usually $10,
and the balance in small installments. These contracts also contained
other provisions intended as inducements to purchasers. Lots in this
tract were sold subject to various restrictions, among which was one

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which required the building of detached frame houses, and, in general, forbidding the erection of any dwelling house on lots having a frontage of less than 40 feet. These restrictions were limited in duration, so that they would expire upon the 1st day of January, 1915. By means of the Culver line on Gravesend avenue and the Sea Beach line in a cut through private property between West Seventh and West Eighth streets, there are now furnished transportation facilities in connection with the subway operated by the New York Municipal Railways Company. This latter connection was put in operation on or about July 1, 1915, but was in course of construction on October 1, 1914, although, prior to that time, there had been a shuttle trolley service on the depressed tracks.

The relators protested the assessments for the year 1915 upon the ground that they were erroneous by reason of overvaluation, and asked for and obtained a hearing before the board of taxes and assessments of the city of New York, in the manner pointed out by the provisions of the charter. But, notwithstanding such protest, the board confirmed the assessments and took the proceedings which, under the charter, were necessary to confirm the assessment rolls, and to compel the payment of the taxes due upon the property in question pursuant to such assessments. Thereupon the relators sued out the writs in these proceedings, alleging that the assessments upon the real property referred to in their petitions are erroneous by reason of over valuation thereof. The issues joined by the petitions and the returns to the writs were heard at the Special Term, evidence being given on behalf of the relators and respondents.

It was contended by the respondents upon the hearing and in their brief that the relators must not only sustain the burden of proof, but, in addition to that, they must overcome the presumption of correctness which attaches to the action of the defendants as a quasi judicial board, and show affirmatively that they have been aggrieved. If I understand this contention correctly to require of the relators more than a preponderance of the proof that their property has been erroneously assessed because of its overvaluation by the respondents, then I do not agree with it. It is an inaccurate statement of the rule governing the action of this court in reviewing an assessment under section 906 of the Charter.

[1] That section prescribes plainly and explicitly the conditions under which a judicial review of any final determination of the board of taxes and assessments shall be granted by this court, and, when allowed, the procedure under it is regulated by article 13 (formerly 11) of the Tax Law. That article provides for a judicial determination by the court, either upon the petition and return, or upon new evidence, to be taken by the court or a referee, of the question whether the assessment is illegal or erroneous or unequal for any of the reasons alleged in the petition.

[2] This is a special proceeding, not a common-law certiorari, and it is not conducted under the strict rules of the common law, either in the admission of evidence or otherwise. People ex rel. Walkill Valley R. R. Co. v. Keator, 36 Hun, 592; People ex rel. Warren v. Carter, 47 Hun, 446.

[3] In the proceeding the burden of proof is upon the party assailing the assessment to establish affirmatively its alleged inequality or excessiveness. People ex rel. Westchester F. I. Co. v. Davenport, 91 N. Y. 574; People ex rel. Osgood v. Commissioners, 99 N. Y. 154, 1 N. E. 401.

[4] In the absence of evidence to the contrary, the assessors are presumed to have properly performed their duties in making the assessment. People ex rel. Manhattan Railway Co. v. Barker, 146 N. Y. 304, 40 N. E. 996. It has been distinctly held that the remedy given to the property owner who is aggrieved by the action of the taxing authorities of the city of New York to review the final determination of the tax board by a certiorari proceeding taken under section 906 of the Charter (Laws 1901, c. 466) furnishes a remedy independent and different from the ordinary proceeding by certiorari. This was clearly pointed out by Judge Vann in People ex rel. Manhattan Ry. Co. v. Barker, 152 N. Y. 417, 46 N. E. 875, where he says:

"The special statutory writ now before us differs from its predecessors in one remarkable respect, in that it permits a redetermination of all questions of fact upon evidence, taken in part at least, by the Special Term, or under its direction. * * * What is called a review may thus become a proceeding in the nature of a new trial. The return is not conclusive, as in the common-law and Code writs. * * * The provisions of the Code do not apply to it. People ex rel. Church v. Assessors, 106 N. Y. 671 [12 N. E. 794]. The petition is regarded as the complaint, the return as the answer, and, in deciding the issues joined thereby, the court may call witnesses to its aid and their testimony becomes a part of the proceedings upon which the determination of the court is to be made."

Judge Edward T. Bartlett, writing for the Court of Appeals in People ex rel. Thomson v. Feitner, 168 N. Y. 441, on page 449, 61 N. E. 763, on page 766, said:

"The scheme of assessment and taxation provided for the city of New York has no similarity to the general law applicable to the other portions of the state."

[5] It is, in effect, a new hearing, and the whole subject is before the court. In People ex rel. Knickerbocker S. D. Co. v. Wells, 181 N. Y. 245, at page 251, 73 N. E. 961, at page 962, the court said:

"This court has frequently held that the proceedings at Special Term, under the statutory writ of certiorari, are in the nature of a new trial. Judge Vann, in commenting upon this new procedure, said: 'Thus, the writ under consideration may be a writ of review, merely, and hence properly called a writ of certiorari, and it may be in the nature of a "venire de novo," and utterly foreign in function to the writ of certiorari as known in the history of the law.' People ex rel. Manhattan R. Co. v. Barker, 152 N. Y. 417, 432 [46 N. E. 875, 879]."

[6] The return is not in this writ of review de novo conclusive upon the questions of fact stated therein. The petition and return are regarded simply as pleadings in the proceeding. People ex rel. Citizens' L. Co. v. Feitner, 81 App. Div. 118, 81 N. Y. Supp. 73, cited with approval in People ex rel. Buffalo B. P. Ass'n v. Stillwell, 190 N. Y. 284, 291, 83 N. E. 56.

[7] Under the rule thus enunciated it is the duty of the court to determine the issues which are raised by the pleadings, viz. the petition and return, and this determination may be made upon the evidence

produced by the parties, the burden of proof of the allegations of the petition not admitted by the return resting upon the relator. Under the pleadings in the present cases, therefore, and upon the evidence offered, the question to be determined is whether the real property referred to in the petition has been over assessed; i. e., valued at a sum greater than the sum for which "each separately assessed parcel of real estate under ordinary circumstances would sell if it were wholly unimproved." The expression used in the charter (section 899) has been held to require the assessors to assess the property at its actual value. People ex rel. M. R. Co. v. Barker, 146 N. Y. 304, 40 N. E. 996.

The relators claim to be aggrieved by the increase in the assessment for the taxes of the year 1915 over the assessment for the taxes of the year 1914 in respect of each of the tax lots referred to in their petition. The increase in the assessment so complained of is 20 per centum or over in 82 cases out of the 118 reviewed. In the remaining cases, the increase runs from 7 to 20 per centum. These assumed advances in one year over the assessed valuation for the preceding year are defended largely, if not entirely, upon the theory that there was during that year an enhancement of the actual value of the lots in question, due to the two factors which have already been adverted to, namely: first, that the restrictive covenants in relation to the character of buildings upon the lots expired on January 1, 1915; and, secondly, the construction of the depressed Sea Beach line in connection with the New York municipal subway system. The facts established by the evidence, however, do not, in my opinion, support the city's contention in this respect. Only a few sales of lots in this tract were made during the year ending on October 1, 1914, so far as the evidence shows, and such sales as were made would not support the inference that there had been any general increase in the actual value of the property in the tract sufficient to justify a general increase in the assessments running from twenty to two hundred per centum in that period. The property, for some unexplained reason, has remained dormant, and the court is confronted with this fact, as to which there is no dispute.

I think that the necessary conclusion from the evidence is that the action of the deputy tax commissioner, who initiated these increases in the assessment, was based upon anticipatory, rather than upon actual, increases in value. It is true that the expert called by the respondent testified to a large increase in the actual value of the lands in question, but this opinion evidence was not based upon sales of lots in the Marlboro tract, except such lots or parts of lots as had been purchased or condemned by the Sea Beach Railway Company for the construction of its line, which sales did not furnish any fair criterion of value of the remaining lots in the tract. It is also true that the opinion evidence of the witness called on behalf of the relators was not, in all respects, logical, and it was not entitled to, nor did it receive from the court, undue weight in reaching the conclusion herein expressed.

The relators, in my opinion, have successfully met, in nearly all of the cases complained of, the burden resting upon them, and are there-

fore entitled to a final order sustaining the writ in each case, and providing that the assessments of their property for the taxes of the year 1915 be reduced to the amounts set forth in the last column of the schedule set forth below:

## Harwood Real Estate Association Properties.

| Block. | Lot. | Assessed Valuation 1915. | Assessed Valuation 1914. | |
|---|---|---|---|---|
| 6549 | 1 | $  3,800 | $  3,400 | $  3,800 |
| | 54 | 2,400 | 2,000 | 2,000 |
| | 60 | 3,900 | 3,500 | 3,500 |
| | 69 | 2,000 | 1,700 | 1,800 |
| | 72 | 1,900 | 1,600 | 1,600 |
| 6550 | 12 | 3,600 | 3,000 | 3,000 |
| | 20 | 1,200 | 1,000 | 1,000 |
| | 24 | 1,200 | 1,000 | 1,000 |
| 5 lots | 49 | 3,000 | 2,500 | 2,500 |
| | 62  of  62 | 1,200 | 1,000 | 1,000 |
| 6551 | 1 | 3,600 | 2,900 | 3,000 |
| | 4 | 2,200 | 1,800 | 2,000 |
| | 8 | 3,600 | 2,900 | 3,000 |
| | 12 | 1,200 | 1,000 | 1,000 |
| | 16 | 1,200 | 1,000 | 1,000 |
| | 24 | 3,600 | 3,000 | 3,000 |
| | 34 | 1,800 | 1,500 | 1,500 |
| | 51 | 600 | 500 | 500 |
| | 52 | 600 | 500 | 500 |
| | 57 | 5,400 | 4,500 | 4,500 |
| | 68 | 1,200 | 1,000 | 1,000 |
| 6552 | 4 | 2,400 | 1,800 | 2,000 |
| | 8 | 3,900 | 2,900 | 3,000 |
| | 16 | 1,200 | 1,000 | 1,000 |
| | 18 | 1,200 | 1,000 | 1,000 |
| | 22 | 5,400 | 4,500 | 4,500 |
| | 49 | 2,400 | 2,000 | 2,000 |
| | 55  of  55 | 1,200 | 1,000 | 1,000 |
| | 59  of  55 | 1,200 | 1,000 | 1,000 |
| | 68 | 1,200 | 1,000 | 1,000 |
| 6553 | 1 | 5,500 | 4,000 | 4,000 |
| | 4 | 3,000 | 2,200 | 2,200 |
| | 53 | 1,600 | 1,500 | 1,500 |
| | 69 | 1,600 | 1,500 | 1,500 |
| 6576 | 10 | 4,500 | 2,500 | 2,750 |
| | 26 | 1,200 | 1,000 | 1,000 |
| 6577 | 1 | 7,500 | 2,450 | 5,500 |
| | 32 | 800 | 600 | 600 |
| | 74 | 5,000 | 4,000 | 4,000 |
| 6578 | 7 | 2,400 | 2,200 | 2,250 |
| | 19 | 1,400 | 1,200 | 1,200 |
| | 33 | 1,400 | 1,200 | 1,200 |
| | 49 | 1,400 | 1,200 | 1,200 |
| | 54 | 2,400 | 2,100 | 2,100 |
| | 89 | 1,200 | 1,000 | 1,000 |
| | 100 | 1,200 | 1,000 | 1,000 |
| | 106 | 1,100 | 900 | 1,100 |
| 6579 | 5 | 1,600 | 1,500 | 1,500 |
| | 9 | 1,600 | 1,500 | 1,500 |
| | 41 | 2,300 | 2,000 | 2,100 |
| | 64  of  64 | 4,200 | 3,600 | 3,600 |
| | 76 | 1,400 | 1,200 | 1,200 |
| | | $123,600 | $97,850 | $102,700 |

## Brooklyn Development Company Properties.

| Block. | Lot. | Assessed Valuation 1915. | Assessed Valuation 1914. | |
|---|---|---|---|---|
| 6561 | 26 | $ 1,200 | $ 1,000 | $ 1,000 |
| 6562 | 40 | 600 | 500 | 500 |
| 6576 | 43 | 2,600 | 2,200 | 2,400 |
| 6577 | 50 | 800 | 600 | 600 |
| | 64 | 2,500 | 2,000 | 2,000 |
| | 70 | 2,000 | 1,600 | 1,600 |
| 6578 | 37 | 1,400 | 1,200 | 1,200 |
| | 75 of 73 | 1,200 | 1,000 | 1,000 |
| 6582 | 74 | 600 | 500 | 500 |
| | 78 | 600 | 500 | 500 |
| 6597 | 1 | 2,000 | 1,700 | 1,700 |
| | 4 | 1,200 | 1,000 | 1,000 |
| | 19 | 500 | 400 | 400 |
| | 23 | 1,250 | 1,000 | 1,000 |
| | 39 | 500 | 400 | 400 |
| 6598 | 1 | 2,000 | 1,700 | 1,800 |
| | 8 | 2,000 | 1,700 | 1,800 |
| | 24 | 600 | 400 | 400 |
| | 28 | 600 | 400 | 400 |
| | 73 | 500 | 400 | 400 |
| 6599 | 9 | 1,400 | 1,200 | 1,300 |
| | 64 | 500 | 375 | 375 |
| | 85 | 500 | 375 | 375 |
| 6600 | 4 | 1,400 | 1,200 | 1,200 |
| | 8 | 2,400 | 2,100 | 2,100 |
| | 12 | 1,400 | 1,200 | 1,200 |
| | 26 | 2,800 | 2,400 | 2,400 |
| | 32 | 1,400 | 1,200 | 1,200 |
| | 59 | 600 | 500 | 500 |
| | 67 | 600 | 500 | 500 |
| | 69 | 1,200 | 1,000 | 1,000 |
| 6601 | 56 | 2,800 | 2,400 | 2,400 |
| 6607 | 57 | 600 | 500 | 500 |
| | 67 | 600 | 500 | 500 |
| | 71 | 1,200 | 1,000 | 1,000 |
| 6622 | 28 | 500 | 400 | 400 |
| | 34 | 500 | 400 | 400 |
| | 41 | 1,600 | 1,300 | 1,400 |
| | 59 | 2,000 | 1,600 | 1,600 |
| | 64 | 1,000 | 800 | 800 |
| 6623 | 12 | 600 | 400 | 400 |
| | 19 | 600 | 400 | 400 |
| | 21 | 600 | 400 | 400 |
| | 42 | 1,400 | 1,300 | 1,400 |
| | 46 | 2,300 | 2,150 | 1,400 |
| | 54 | 1,500 | 1,200 | 1,200 |
| | 71 | 500 | 400 | 400 |
| 6624 | 19 | 400 | 350 | 350 |
| | 46 | 1,600 | 1,500 | 1,500 |
| | 51 | 500 | 375 | 375 |
| | 54 | 500 | 375 | 375 |
| | 61 | 500 | 375 | 375 |
| | 64 | 500 | 375 | 375 |
| 6625 | 14 | 1,400 | 1,200 | 1,200 |
| | 22 | 1,400 | 1,200 | 1,200 |
| | 49 | 1,200 | 1,000 | 1,000 |
| | 56 | 1,200 | 1,000 | 1,000 |
| | 68 | 600 | 500 | 500 |

### Brooklyn Development Company Properties—Cont'd.

| Block. | Lot. | Assessed Valuation 1915. | Assessed Valuation 1914. | |
|---|---|---|---|---|
| 6626 | 64 | $ 1,400 | $ 1,200 | $ 1,200 |
| 6648 | 1 | 2,500 | 2,200 | 2,200 |
| 6649 | 1 | 5,500 | 3,000 | 4,000 |
| 6651 | 19 of 19 | 4,600 | 4,000 | 4,000 |
| 6652 | 23 | 9,800 | 8,100 | 8,100 |
| 6653 | 33 | 2,000 | 1,800 | 1,800 |
| 6654 | 39 | 1,050 | 950 | 950 |
| 6655 | 41 | 950 | 850 | 850 |
| | | $94,750 | $77,750 | $78,700 |

In accordance with the provisions of section 294 of the Tax Law, costs are hereby awarded to each relator against the tax district represented by the respondents, to be taxed by the clerk in accordance with the provisions of that section.